AB:AS/LKG
F.#2015R01179

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – X

UNITED STATES OF AMERICA

     - against -

SHAMEKE WALKER,
    also known as "Bonafide,"

          Defendant.

– – – – – – – – – – – – – X

Cr. No. <u>15-388 (S-1)(JBW)</u>

THE GOVERNMENT'S SUBMISSION REGARDING THE DEFENDANT'S "ARMED
<u>CAREER CRIMINAL" AND "CAREER OFFENDER STATUS"</u>

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

Andrey Spektor
Lindsay K. Gerdes
Assistant U.S. Attorneys
(Of Counsel)

Table of Contents

I.  PRELIMINARY STATEMENT ........................................................................... 2

II.  Background ................................................................................................. 3

    A.  Procedural Background ................................................................ 3

    B.  Trial............................................................................................... 3

    C.  Outstanding Issues ...................................................................... 4

    D.  The Defendant's Relevant Criminal History ............................... 5

III.  ARGUMENT ............................................................................................... 7

    A.  The Defendant Is an "Armed Career Criminal" Under
        Section 924(e) Because He Has Committed Three Violent Felonies .......... 7

        1.  New York Robbery.................................................... 8

        2.  South Carolina Strong Arm Robbery ............................. 18

        3.  Federal Assault .......................................................... 20

    B.  The Defendant Is a "Career Offender" Under the Guidelines
        Because He Has Committed Two Crimes of Violence in the
        Last 15 Years ............................................................................. 24

    C.  Counts One and Two Were Properly Submitted And Decided
        By the Jury .................................................................................. 28

IV.  CONCLUSION ................................................................................... 31

I.       PRELIMINARY STATEMENT

In July 2016, a jury convicted the defendant Shameke Walker, also known as "Bonafide," of committing his latest violent felony—an armed robbery during which he almost killed a store clerk and shot a bystander.  For the second time since 2007, this Court will sentence the defendant for a felony gun-related crime.  Since his felon-in-possession conviction in 2007 but before the robbery, the defendant committed an assault in prison, which, together with two other violent robberies, in New York and in South Carolina, make the defendant an armed career criminal under the Armed Career Criminal Act ("ACCA").  The assault and the South Carolina Strong Arm robbery also result in his "career offender" status for purposes of the United States Sentencing Guidelines ("Guidelines").  In fact, this Court has already found the South Carolina robbery a crime of violence in the defendant's prior case—a decision that has withstood evolving precedent.

The Court granted the defendant's requests for stays of sentencing (on consent from the government) to await the resolution of Supreme Court (Beckles) and Second Circuit (Jones) cases, as they were relevant to resolving the defendant's career offender status.  Both decisions further confirm that the defendant is a career offender.

Finally, the Court has ordered the parties to brief whether the defendant's two Hobbs Act convictions, stemming from his armed robbery—for committing the robbery and for using violence in furtherance of the robbery—were multiplicitous.  For the reasons set forth below, the Court was correct in denying the defendant's motion to dismiss one of those counts prior to trial and correctly reaffirmed its decision after the evidence was submitted.  The Supreme Court has explained that the government can charge both counts in circumstances that are indistinguishable from those in this case.

II.      BACKGROUND

      A.      Procedural Background

On July 15, 2016, the defendant was convicted, following a bifurcated jury trial, of all four counts with which he was charged in the Second Superseding Indictment (hereinafter the "Indictment"):  Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count One), Committing Physical Violence in Furtherance of a Robbery, in violation of 18 U.S.C. § 1951(a) (Count Two), Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Three), and Possessing Ammunition as a Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Four).  The Indictment put the defendant on notice that a conviction on Count Four would expose him to a 15-year mandatory minimum sentence under ACCA because at the time he unlawfully possessed ammunition, he had committed at least three violent felonies.

      B.      Trial

The defendant—the second highest ranking member of a particularly dangerous set of the Bloods gang—was convicted of committing a violent robbery of a small convenience store in the East New York neighborhood of Brooklyn.  Early in the morning on June 13, 2015, the defendant and his fiancée Minyon Mitchell went to survey the scene at this location, just minutes away from their apartment.  Then, after several approaches by the defendant on his bicycle, armed with a gun, the defendant went inside the store to commit the robbery.  Mitchell watched.

When the defendant returned to the store that final time, he hid the firearm in his sweatshirt.  The convenience store clerk, who had been outside taking a break, followed the defendant inside the store, thinking the defendant had returned as a shopper.  Once inside,

the defendant drew his weapon, threatened the store clerk, and took money from the cash register (as well as other items).  While the defendant was loading up on cash and goods, the clerk retrieved a machete, ran outside, and used the machete to cut the rope that had been holding open the front glass door.  The clerk shut the door and attempted to keep the defendant from fleeing.

With his freedom suddenly in jeopardy, the defendant drew his weapon again, aimed it through the glass door at the clerk's head, and fired.  The bullet—millimeters away from killing the clerk—traveled across the street and hit a security guard, wounding him in the leg.  With the glass door shattered and the store clerk fearing for his life, the defendant opened the door and pedaled off on his bicycle with the cash and other goods in hand.

The jury heard testimony from, among other witnesses, the clerk whom the defendant almost killed during the robbery.  The jurors were also able to see almost the entire robbery on clear surveillance video, including the defendant firing the gunshot.  The Court precluded, however, the second victim—who was wounded across the street —from testifying that he had been shot and further precluded the government from introducing any evidence that the second victim had been injured.

The Court bifurcated the trial so that the jury would not learn during the robbery phase of the trial that the defendant had been convicted of at least one felony—a fact it had to learn during the felon-in-possession phase of the trial as it was one of the elements of the offense.  The jury returned guilty verdicts following both phases.  See Docket Entry Nos. 115 & 118.  For Count three, it specifically found that the defendant brandished and discharged the weapon.

C.     Outstanding Issues

4

Following the conviction, the defendant moved, with government's consent, to stay sentencing to await the Supreme Court's resolution of Beckles v. United States, 137 S. Ct. 886 (2017), because it could affect the defendant's "career offender" designation under the Guidelines.  Beckles has now been decided.  The defendant asked again to stay the case because the Second Circuit in United States v. Jones, 830 F.3d 142 (2d Cir. 2016) had withdrawn its opinion in light of Beckles.  Jones has now been resolved as well.  United States v. Jones, 871 F.3d 150 (2d Cir. 2017).  Like the Supreme Court in Beckles, the Jones panel affirmed the career-offender designation of the defendant.

On December 5, 2017, the Court issued an order asking the parties to brief issues related to the mandatory minimum sentence that the defendant faces, whether he should be designated a career offender, and whether Count One was duplicative of Count Two.

### D.    The Defendant's Relevant Criminal History

The complicated issues surrounding the defendant's sentencing arise in part because he has committed three violent felonies in addition to the instant armed robbery, which he committed while on supervised release from his prior gun case in front of this Court, United States v. Walker, Criminal Docket No. 07-347 ("Walker I").  The defendant's last federal case does not factor into the issues surrounding his career-offender or ACCA status, but will weigh heavily in the government's sentencing submission.  The three convictions that are critical are the following:[1]

- 1991 New York Robbery in the Second Degree (Aided by Another), in violation of New York Penal Law 160.10(1).  The defendant was sentenced in November

---

[1] This information comes from the defendant's prior Presentence Investigation Reports, which disclose other assault and firearm cases.

1991.  This conviction stemmed from an assault of an individual by the defendant and two co-conspirators.  All three co-conspirators beat the victim, while one (not the defendant) indicated that he had a firearm.  The defendant was sentenced to 18 to 54 months.

- 1999 South Carolina Strong Arm Robbery for stealing, by force, almost $5,000 from a gas station attendant, in violation of South Carolina Code Section 16-11-330(A).  The defendant was sentenced in March 1999 to ten years' imprisonment; he was released on June 30, 2006.

- 2011 Federal Assault, in violation of 18 U.S.C. § 113(a)(3).  While incarcerated for his last federal case in front of this Court, the defendant committed two serious crimes in prison, both resulting in separate federal convictions.  The relevant crime is reflected in the judgment posted on June 13, 2011 in United States v. Walker, Criminal Docket No. 10-97 (N.D.W.Va.).  The defendant was convicted for aiding and abetting an assault with a dangerous weapon and with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3).  For this assault, the defendant received an additional six-month sentence to run consecutively to the sentence imposed by this Court in Walker I.

The government respectfully submits that all three of these crimes are violent felonies for purposes of ACCA.  The 1999 South Carolina Strong Arm robbery and the 2011 Federal Assault are also crimes of violence that occurred within the last 15 years, making the defendant a career offender for purposes of the Guidelines.

III.     ARGUMENT

    A.     The Defendant Is an "Armed Career Criminal" Under Section 924(e) Because He Has Committed Three Violent Felonies

ACCA provides for a mandatory minimum term of imprisonment of 15 years for a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or a "serious drug offense."  18 U.S.C. § 924(e).  ACCA contains three clauses that define which prior felonies qualify as violent felonies:

> • The "force" or "elements" clause which covers any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another,"

> • The "enumerated offenses" clause, which covers any crime that "is burglary, arson, or extortion, [or] involves use of explosives" and

> • The "residual" clause, which covers any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

In Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"), the Supreme Court held that ACCA's residual clause is impermissibly vague and, therefore, imposing an increased sentence under the residual clause "violates the Constitution's guarantee of due process."  Id. at 2563.[2]  The Supreme Court has also discussed what constitutes "force" for purposes of the "force" or "elements" clause of ACCA: namely, "force capable of causing physical pain or injury to another person."  Johnson v. United States, 559 U.S. 133, 140 (2010) ("Johnson I").  Johnson I involved Florida's simple battery

---

[2] In Welch v. United States, _ U.S. _, 136 S. Ct. 1257 (2016), the Supreme Court held that Johnson II was retroactive to cases involving ACCA-enhanced sentences on collateral review.

statute, which is generally a misdemeanor, and requires only "actually and intentionally touching" another person.  The Court held that felonies, like Florida's simple battery statute, that "involve a mere unwanted touching" do not qualify as violent felonies.  559 U.S. at 142.

> Johnson I explained that the bar to establish physical force is low, observing that:

> Specifying that 'physical force' must rise to the level of bodily injury does not suggest that without the qualification 'physical force' would consist of the merest touch.  It might consist, for example, of only that degree of force necessary to inflict pain— a slap in the face, for example.

Johnson I, 559 U.S. at 143; United States v. Chapman, 866 F.3d 129, 136 (3d Cir. 2017) ("The Supreme Court in Johnson held that the 'slightest offensive touching' does not qualify as 'physical force' – that is it.") (quoting Johnson I, 559 U.S. at 139; United States v. Armour, 840 F.3d 904, 909 (7th Cir. 2016) (under Johnson I, the "violent force that must be feared for robbery by intimidation . . . has a low threshold – a fear of a slap in the face is enough").  Notably, the Johnson I Court explained that the force required in order to be guilty of the crime of robbery is precisely the type of power-creating force it envisioned.  See Johnson I, 559 U.S. at 139 (noting that one definition for "physical force" is "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim").

### 1.    New York Robbery

Under New York law, a person is guilty of robbery (of any degree) when he "forcibly steals property."  N.Y.P.L. §§ 160.00, 160.05, 160.10 and 160.15.  A person "forcibly steals property," when:

> in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

> 1. Preventing or overcoming resistance to the
> taking of the property or to the retention
> thereof immediately after the taking; or
>
> 2. Compelling the owner of such property or
> another person to deliver up the property or
> to engage in other conduct which aids in the
> commission of the larceny.

N.Y.P.L. § 160.00. The defendant was convicted of Robbery in the Second Degree under §

160.10(1) ("aided by another person actually present").

The plain reading of New York's robbery definition makes clear that "forcibly

stealing" involves, at a minimum, the threatened use of "force capable of causing physical

pain or injury to another person" under Johnson I. 559 U.S. at 140. No lesser amount of

force could possibly be sufficient to "[p]revent[] or overcom[e] resistance" to the taking of

property or to "compel[]" a property owner to give up her property. And it is inconceivable

that an amount of force that is not capable of causing pain or injury would nevertheless be

sufficient to "prevent[] or overcom[e]" resistance to the taking of property. See N.Y.P.L.

§ 160.00(1). It is similarly inconceivable that such meek force could be sufficient to

"compel[]" a property owner to give up her property or resist the person attempting to take it.

See id. § 160.00(2). What person would be prevented from resisting the taking of her

property by force that, by definition, could not harm her? What person would involuntarily

give up her property in the face of such a meager effort?

This commonsense reading of New York law finds further support in decisions

of the New York Appellate Division, which has made clear that the taking of property with

less force than the force described above does not constitute robbery at all. See People v.

Middleton, 212 A.D.2d 809, 810 (2d Dep't 1995) ("There was no evidence adduced at trial

by the prosecution concerning any aggravating factors, i.e., the complain[ant] was not intimidated, knocked down, struck, or injured, which would elevate the purse snatching to a robbery."); People v. Dobbs, 24 A.D.3d 1043, 1044 (3d Dep't 2005) (robbery charge properly reduced to petit larceny because there was "no indication from [victim's] testimony that she was threatened, pushed, shoved or injured during the incident").

   Other New York decisions point in the same direction.  The New York Court of Appeals held that a robbery statute satisfied "by sudden or stealthy seizure or snatching" would not be considered robbery under New York law and could not properly be a basis for predicate felony offender adjudication.  People v. Jurgins, 26 N.Y.3d 607, 614-15 (2015). Finally, the Third Department found no error in a jury instruction on "minimal amount of force" as "a physical power causing or capable of causing or inspiring fear of some physical harm against the person at [whom] it is directed" since it correctly instructed that N.Y.P.L. § 160.15 "requires significantly more than mere unwanted physical contact," a holding similar to Johnson I's.  People v. Curet, 256 A.D.2d 1017, 1018 (3d Dep't 1998).

   The government is aware that this Court has reached the opposite conclusion in United States v. Moncrieffe, 167 F. Supp. 3d 383 (E.D.N.Y. 2016).  In Moncrieffe, the Court dismissed an indictment charging the defendant with illegal reentry.  In doing so, this Court found that New York Robbery in the First Degree did not amount to a "crime of violence" as defined by Section 16 of Title 18 of the United States Code, which the Court noted was a definition that was "virtual[ly] identical" to that of the "violent felony" definition in ACCA.  The Court has subsequently relied on this opinion—and that of other judges in the district who have reached similar conclusions—in granting a habeas petition for a defendant convicted of a New York Second Degree attempted robbery, finding that this

conviction did not qualify as a violent felony under ACCA.  United States v. Brown, Civil

Docket No. 16-2932 (JBW).

       The issue has divided courts in this district.  Chief Judge Dora L. Irizarry, in

an oral ruling in United States v. Love, Criminal Docket No. 15-284 (DLI) (attached as an

Exhibit to this brief), concluded that a New York Robbery in the Third Degree meets the

Supreme Court's force requirement.  The issue will likely soon be decided by the Second

Circuit as several cases have made their way up on appeal, squarely presenting the issue

before this Court.[3]

       Like other courts who have reached the same conclusion, this Court in

Moncrieffe (and in its subsequent ruling in Brown) relied on a few terse New York appellate

division cases to conclude that in New York, a defendant can be guilty of robbery while

employing "minimal" physical force, "including a bump, a brief tug-of-war over property, or

even the minimal threatened force exerted in 'blocking' someone from pursuit by simply

standing in their way."  Moncrieffe, 167 F. Supp. 3d at 403.

       The government respectfully disagrees with this analysis for four reasons.

**First**, while New York appellate division opinions are "helpful indicators" about how the

New York Court of Appeals would interpret New York law, it is the Court of Appeals' view

that controls.  In Jurgins, 26 N.Y. 3d 607, the Court analyzed whether a D.C. robbery statute

was a proper basis for a predicate felony, and, in reaching its conclusion, offered its view on

the force required to commit any New York robbery.  In no uncertain terms, this 2015

opinion—which post-dates every New York case cited by this Court in Moncrieffe—held

---

[3] The government has, for example, appealed the Court's decision in Brown.  The appeal has not
yet been fully briefed yet. See Second Circuit Docket No. 17-1943.

that a taking "by sudden or stealthy seizure or snatching" would be insufficient under New York law to constitute a robbery, and is more "akin to pickpocketing, or the crime of jostling," both of which are misdemeanors.  Id. at 614.  This view comports with the above-cited Third Department's 2005 opinion in Dobbs, 24 A.D.3d at 1044, which affirmed the reduction of a robbery charge to a petit larceny because a victim had not been "threatened, pushed, shoved or injured."  Jurgins led Chief Judge Irizarry to "wonder whether that opinion from the New York State Court of Appeals doesn't call into question" the older appellate division decisions.  Love Sentencing Tr. at 19:2-10.

       **Second**, even those older appellate division cases do not stand for the proposition that "forcible stealing" under New York law can be conducted with some amount of force less than "force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140.  The state courts did not have occasion to consider the federal question, leaving us with the exercise of determining whether the brief opinions have essentially read out the word "forcible" from "forcible stealing."

       In answering this question, it is important to remember that Johnson I did not create a high bar to establishing "physical force."  Chapman, 866 F.3d at 136 ("The Supreme Court in Johnson [I] held that the 'slightest offensive touching' does not qualify as 'physical force' – that is it.") (quoting Johnson I, 559 U.S. at 139); United States v. Garcia, 877 F.3d 944, 955 (10th Cir. 2017) ("The Supreme Court has recognized physical force need not be applied directly to the body of the victim to be capable of producing bodily injury.");  United States v. Armour, 840 F.3d 904, 909 (7th Cir. 2016) (under Johnson I, "violent force that must be feared for robbery by intimidation. . . has a low threshold – a fear of a slap in the face is enough").

With this standard in mind, the government respectfully submits that the Court's focus on the New York cases did not factor in the implicit threat of force, which could independently satisfy ACCA's force requirement.  See  18 U.S.C. § 924(e)(2)(B)(i) ("violent felony" has "as an element, the use, attempted use, or threatened use of physical force") (emphasis added); cf. U.S.S.G. § 4B1.2(a) ("crime of violence" includes any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

For example, standing in front of someone to block his pursuit of a robber may not involve the use of violent force, but it certainly involves the threat of violent force—that the blocker will knock the pursuer over or take other physical actions to prevent pursuit. Similarly, a "tug of war" over property may be brief because the robber wins easily, but a less forceful tug by the robber still threatens the use of violent force if the initial tug does not dislodge the property.  The use of some force can establish the threat to use even greater force if the victim resists.  See United States v. Castleman, 134 S. Ct. 1405, 1414-15 (2014) (physical force "encompasses even its indirect application"); United States v. Hill, 832 F.3d 135, 143 (2d Cir. 2016) ("Some threats do not require specification of any particular means in order to be effective; yet they still threaten some type of violence and the application of some force."); cf. United States v. Doctor, 842 F.3d 306, 310 (4th Cir. 2016) ("Under the right circumstances, a slight threat – 'you better hand over the money, or else,' or even just a menacing stare – can communicate an intent to cause great bodily injury.  Put simply, the slight or implicit nature of a threat does not render it nonviolent.").  As a result, all of the robberies the court cited still involved the "use, attempted use, or threatened use" of violent force, 18 U.S.C. § 924(e)(2)(B)(i), and therefore would qualify as "violent felonies" for

13

purposes of the ACCA.  A restrictive focus to the contrary appears to read the "threat" element out of both New York's robbery law and ACCA.

> Judge Irizarry's common sense perspective on this issue is also instructive:

> [A]nyone who has grown up in a poor neighborhood and has been the subject of any kind of robbery or anywhere that you might have subjected it, it has to be a frightening experience to be surrounded by a group of people who are demanding your money and the only implication can be is that if you don't give in that something terrible is going to happen to you. And that the only reason that nothing happened to you is because you gave in and handed over the money, which is generally what the cops say you should do anyway in the event of a robbery is not resist, to avoid the use of physical force, I think defies the reality of the situations.

Love Sentencing Tr. 19:13-20:24.

**Third**, concluding that a New York robbery is not a violent felony under ACCA runs afoul of Congressional intent.  Indeed, robbery is one of two crimes that has always been a predicate offense under ACCA.  The House of Representatives Report accompanying the initial passing of ACCA observed that robbery and burglary are the crimes most frequently committed by career criminals.  Taylor v. United States, 495 U.S. 575, 581 (1990).  Therefore, when ACCA was enacted, the statute included only two predicate offenses: robbery and burglary.  See Pub. L. No. 98-473, ch. 18, 98 Stat. 1837 § 1802 (1984) ("[A] person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court . . . for robbery or burglary, or both" shall be punished).  The prior version of ACCA defined robbery as "any felony consisting of the taking of the property of another from the person or presence of another by force or violence, or by threatening or placing another person in fear that any person will imminently be subjected to bodily injury."  Id. § 1803.

14

Less than three years later, in 1986, Congress "expanded the predicate offenses triggering the sentence enhancement from 'robbery or burglary' to 'a violent felony or a serious drug offense.'"  Taylor, 495 U.S. at 582 (discussing legislative history of definition of "violent felony" in the ACCA) (emphasis added); see Begay v. United States, 553 U.S. 137, 143–44 (2008) ("Prior to the enactment of the current language, [ACCA] applied its enhanced sentence to offenders with 'three previous convictions for robbery or burglary.' . . . Congress sought to expand that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii)).") (emphasis added) (citation omitted), overruled by Johnson II.  Even after such an expansion, the statute continued to embody Congress's view that "robberies"—not just some robberies—"involve physical violence or the threat thereof, being deliberately directed against innocent individuals."  H.R. Rep. No. 98-1073, at 3; see Taylor, 495 U.S. at 590 (finding no "indication that Congress ever abandoned its general approach, in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law").  To adopt an argument that would remove any New York robbery conviction from the reach of ACCA thus thwarts the will of Congress.

**Fourth**, a recent Second Circuit decision in Stuckey v. United States, 2017 U.S. App. LEXIS 25737 (2d Cir. Dec. 20, 2017), its recent vacutur of Jones, and a number of other Second Circuit opinions, all suggest that the Circuit will soon join Chief Judge Irizarry in concluding—consistent with Congressional intent—that any New York robbery meets the force requirement of ACCA (or the Guidelines' career offender provision).

15

Although the panel in Stuckey explicitly reserved the question of whether all
New York robberies are violent felonies under ACCA, 2017 U.S. App. LEXIS 25737, at *10
fn. 6, it ultimately concluded that at least two subdivisions of New York Robbery in the First
Degree constitute violent felonies, id. at *20.  With regard to force, the Second Circuit held
that N.Y.P.L. §§ 160.15(3) (defendant "uses or threatens the immediate use of a dangerous
instrument") and 160.15(4) (defendant "display[ed] what appears to be a . . . firearm") both
satisfy the force requirement under the "plain text of ACCA."  Id. at 14.

This opinion is in line with the Circuit's precedent, which undoubtedly will be
further clarified in the coming months.  See, e.g., United States v. Williams, 526 F. App'x
29, 37 (2d Cir. 2013) (violation of N.Y.P.L. § 160.10 constitutes a "violent felony"); United
States v. Bogle, 522 F. App'x 15, 19 (2d Cir. 2013) (second degree robbery is a violent
felony); accord United States v. Kornegay, 641 F. App'x 79, 85 (2d Cir. 2016) (second
degree robbery "has as an element the use, attempted use, or threatened use of physical force
against the person of another") (citation omitted); Belk v. United States, 16-765, 2016 WL
1587223, *1 (2d Cir. Apr. 19, 2016) (summary order) (denying permission to file a
successive petition since petitioner's New York robbery conviction qualified under Section
924(e)(2)(B)(i) and concluding that Johnson I did not announce a new rule of constitutional
law);[4] Gonzalez v. United States, 433 F. App'x 24, 27 (2d Cir. 2011) (defendant was a career
offender in part because his "2006 second-degree robbery conviction" was a "crime of

_____

[4] While a separate case, Massey v. United States, 16-1043, applied the same reasoning as Belk,
see DE:36, the panel ultimately recalled the mandate and granted permission to file a successive petition,
following a motion seeking that relief that relied on the now-vacated opinion in United States v. Jones,
830 F.3d 142 (2d Cir. 2016), see DE:39, 44 (Sept. 21, 2016).  This ruling occurred prior to the vacatur of
Jones.  See United States v. Jones, 838 F.3d 296 (2d Cir. 2016).

violence"). See also United States v. Miles, 748 F.3d 485, 491 (2d Cir. 2014) (per curiam)

(New York "state conviction for robbery in the third degree . . . falls within ACCA"

definition of violent felony); Williams, 526 F. App'x at 37 (same).

For these four reasons, the government respectfully submits that New York

robbery, including in the Second Degree (aided and abetted by another), is a violent felony

under ACCA.

2.      South Carolina Strong Arm Robbery

The defendant was convicted of South Carolina Strong Arm Robbery under

Section 16-11-330(A) of the South Carolina Code.  That Section provides:

> A person who commits robbery while armed with a pistol, dirk,
> slingshot, metal knuckles, razor or other deadly weapon or while
> alleging, either by action or words, he was armed while using
> representation of a deadly weapon or any object which a person
> present during the commission of the robbery reasonably
> believed to be a deadly weapon, is guilty of a felony. . . .

In South Carolina, a robbery is a lesser included offense of an armed robbery,

State v. Scipio, 283 S.C. 124, 125-126, (1984), and the definition of a robbery is supplied by

the state's common law, S.C. Code Ann. § 16-11-325 ( "The common law offense of robbery

is a felony.  Upon conviction, a person must be imprisoned not more than fifteen years.").

South Carolina courts have defined robbery as "the felonious or unlawful taking of money,

goods, or other personal property of any value from the person of another or in his presence

by violence or by putting such person in fear."  State v. Al-Amin, 353 S.C. 405, 424 (Ct.

App. 2003)  (citing State v. Parker, 351 S.C. 567 (2002)).   See also United States v. Walker,

595 F.3d 441, 446 (2d Cir. 2010) (in appeal from Walker I, explaining the common law

definition of a robbery in South Carolina).  The requirement of putting in fear or intimidation

is satisfied when "an ordinary, reasonable person in the victim's position would feel a threat

of bodily harm from the perpetrator's acts."  State v. Rosemond, 356 S.C. 426, 430 (2003).

In short, to be convicted of a Strong Arm Robbery in South Carolina, the

defendant must have (a) been armed or at least credibly alleged to have been armed and (b)

induced fear or intimidated the victim through a threat of bodily harm.  South Carolina law

thus leaves virtually no space between how the state has defined its Strong Arm Robbery and

18

how ACCA—as interpreted by <u>Johnson I</u>—has defined a violent felony.  The former requires

fear of bodily harm; the latter requires a threat of force "capable of causing physical pain or

injury."  <u>Johnson I</u>, 559 U.S. at 140.

It is not surprising, then, that courts—including at least one in this district—

have unanimously found South Carolina's Strong Arm Robbery to meet the force

requirement of a violent felony and crime of violence.  The Fourth Circuit reached this

conclusion in 2016, in <u>Doctor</u>, 842 F.3d 306, after examining the state's jurisprudence.  The

defendant in <u>Doctor</u> argued that because the robbery could be committed through

intimidation, it could not categorically match ACCA's definition of a violent felony.  The

Fourth Circuit rejected this argument because the "South Carolina Supreme Court has

indicated that a robber intimidates a victim by threatening force."  <u>Id.</u> at 309 (citing <u>State v.</u>

<u>Mitchell</u>, 382 S.C. 1, 675 S.E.2d 435, 437 (2009)).  And because the force has to threaten

"bodily harm," the Fourth Circuit concluded "there is no meaningful difference between a

victim feeling a threat of bodily harm and feeling a threat of physical pain or injury."  <u>Id.</u>

After quickly disposing of other arguments raised by the defendant, the panel in <u>Doctor</u>

found no state court decisions that could suggest "de minimis actual force" would be

sufficient to sustain a conviction for a South Carolina robbery.  <u>Id.</u> at 312.  <u>See also</u> <u>United</u>

<u>States v. Wise</u>, 701 F. App'x. 279, 280-81 (4th Cir. 2017) (reaffirming <u>Doctor</u>'s holding);

<u>United States v. Weston</u>, 681 F. App'x 235, 237 (4th Cir. 2017) (same).

Other courts have found <u>Doctor</u>'s reasoning persuasive, including the only

case to address the issue in this district.  <u>See Grant v. United States</u>, Criminal Docket No. 06-

732 (DLI), 2017 WL 2881132, at *7 (E.D.N.Y. July 5, 2017) (granting habeas petition

because the other two predicates were not, in the court's view, violent felonies but

concluding that a South Carolina Strong Arm robbery is a violent felony under ACCA).  The Sixth Circuit has also recently agreed.  <u>Brinson v. United States</u>, 2017 U.S. App. LEXIS 22916 (6th Cir. Nov. 14, 2017) (holding that South Carolina armed robbery was a violent felony under ACCA, explaining that "[w]e find the reasoning of <u>Doctor</u> persuasive").

      The government respectfully submits that this Court should follow these well-reasoned opinions and find that South Carolina Strong Arm Robbery is a violent felony.

      3.    <u>Federal Assault</u>

      The defendant was convicted under a divisible federal assault statute.  He was indicted and pled guilty to aiding and abetting an assault under 18 U.S.C. § 113(a)(3), which is an "[a]ssault with a dangerous weapon, with intent to do bodily harm."  The statute does not define "assault," requiring courts to look to common law.  <u>See</u> <u>United States v. Delis</u>, 558 F.3d 177, 181 & 183 (2d Cir. 2009) (examining the definition of "simple assault" as used in § 113(a)(5) and citing with approval common law definitions adopted by other circuits, including <u>United States v. Lewellyn</u>, 481 F.3d 695 (9th Cir. 2007)).[5]

      Courts have restated the common law definition of assault as an act that includes either the intentional infliction of injury on another person or the credible threat of doing so, causing "apprehension of immediate bodily harm."  <u>Lewellyn</u>, 481 F.3d at 697. <u>See also</u> Ninth Circuit Pattern Jury Instructions (Criminal) § 8.7 (setting forth four elements: (1) intentional striking or wounding displaying force that placed the victim in fear; (2)

---

[5] Section 113(a)(3) does not include "simple assault."  The statute includes a provision, subsection (a)(5), that differs from the other provisions, including (a)(3), by criminalizing "simple assault."  Simple assault owes its name to the lower level of <u>mens rea</u> required to be convicted of it: it does not require a specific intent to injure; mere offensive contact is sufficient.  <u>Delis</u>, 558 F.3d at 179-81.

defendant acted with intent to do bodily harm; (3) defendant used dangerous weapon; and (4) assault took place on federal ground); United States v. Verwiebe, 874 F.3d 258, 261 (6th Cir. 2017) ("An individual may violate § 113 by (1) willfully attempting to inflict injury on another person or (2) threatening to inflict injury on another person, causing a reasonable apprehension of immediate bodily harm."); United States v. Jojola, 2000 WL 979107, at *6 (10th Cir. July 17, 2000) (unpublished) (conviction under § 113(a)(3) required proof that the defendant "used [a dangerous weapon] to intentionally strike or wound [the victim] (or used a display of force that reasonabl[y] caused her to fear immediate bodily harm) and that he acted with the specific intent to do bodily harm.").

Applying the modified categorical approach, it is clear that Section 113(a)(3) satisfies ACCA's force clause.  Based on the wording of Section 113(a)(3) alone, it is difficult to see how a defendant can assault a victim—specifically intending to "do bodily harm"—with a "dangerous weapon," without at least threatening, or using, physical force.

Although courts in the Second Circuit have yet to address the issue, district court judges around the country have unanimously concluded that Section 113(a)(3) requires physical force consistent with Johnson I.  See United States v. Muskett, No. Criminal Docket No. 13-0980 (SMV), 2017 U.S. Dist. LEXIS 84592, 12-13 (D.N.M. June 2, 2017) ("Conviction under this provision requires more than mere de minimis force (i.e., attempted physical touching, no matter how slight) because it requires that the assault be committed both 'with a dangerous weapon' and 'with intent to do bodily harm.'"), adopted by United States v. Muskett, 2017 U.S. Dist. LEXIS 104000, at *29 (D.N.M. July 6, 2017) ("[A]ssault with a dangerous weapon with the specific intent to do bodily harm, whether committed through the direct or indirect application of physical force, necessarily does require Johnson

21

I-level force."); United States v. Scott, No. 12-CR-51 (RCJ), 2017 U.S. Dist. LEXIS 1449 (D. Nev. Jan. 4, 2017) ("Force with a 'dangerous weapon' is force necessarily capable of causing physical pain or injury.  The Courts of Appeals to address the issue have uniformly ruled that assault- or battery-type crimes containing a dangerous weapon-type element necessarily satisfy Johnson I's requirement that any force used, attempted, or threatened be 'violent.'").[6]  And the only Court of Appeals to address whether Section 113(a)(3) satisfies Johnson I, the Sixth Circuit in an October 2017 opinion, has also agreed: "If a crime already includes some use or threat of physical force, as is true here, the use of a dangerous weapon transforms that force into the type of violent force necessary to constitute a crime of violence." Verwiebe, 874 F.3d at 261.

 For its part, the Second Circuit has addressed a virtually identical statute, New York Second Degree Assault under New York Penal Law § 120.05(2), which states that a defendant is guilty when "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  United States v. Walker, 442 F.3d 787, 787-89 (2d Cir. 2006).  The Second

---

[6] See also United States v. Eagleman, Criminal Docket No. 06-80 (BMM), 2017 U.S. Dist. LEXIS 189989, at *5 (D. Mont. Nov. 16, 2017) ("Assault with the intent to do bodily harm entails more than merely intentional striking or wounding. Assault with intent to do bodily harms also entails an intent to avail oneself of force capable of causing physical injury."); United States v. Sutton, Criminal Docket No. 11-151 (WFN), 2016 U.S. Dist. LEXIS 55629, at *9 (E.D. Wash. Apr. 26, 2016) ("There is no hint that § 113(a)(3) has been applied in a manner requiring less than the use or threatened use of physical force."); United States v. Castillo, Civil Docket No. 16-622 (JCH), 2017 U.S. Dist. LEXIS 106244, at *22-23 (D.N.M. Mar. 10, 2017); United States v. Concho, Civil Docket No. 16-648, 2017 U.S. Dist. LEXIS 200150, at *14-15 (D.N.M. Dec. 4, 2017) ("In sum, the Court finds that it is impossible to (1) knowingly, and with specific intent, (2) attempt . . . to commit a violent injury upon the person of another, coupled with the present ability to do so, (3) while using an object capable of being readily operated or wielded by one person to inflict severe bodily harm or injury upon another person, (4) with the desire or wish to bring about a serious injury to the person of the other, without either using or attempting to use physical force that is capable of causing pain or injury to another person." (internal citation marks omitted)).

22

Circuit concluded in <u>Walker</u> that this crime was a violent felony under ACCA.  And last month, the court reaffirmed <u>Walker</u> in light of <u>Johnson I</u> and <u>Johnson II</u>.  <u>United States v. Rios</u>, 2017 U.S. App. LEXIS 24320, at *6 (2d Cir. Dec. 1, 2017).

Finally, it makes little difference that the defendant was convicted of <u>aiding and abetting</u> the assault.  It is settled that aiding and abetting "is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense."  <u>In re Colon</u>, 826 F.3d 1301, 1305 (11th Cir. 2016) (internal quotation marks omitted).  <u>See also</u> <u>Gottdiener v. Sater</u>, 35 F. Supp. 3d 386, 397 (S.D.N.Y. 2014) ("18 U.S.C. § 2 provides that one who aids and abets a federal crime is liable as a principal.").  As a result, courts have had no difficulty finding a defendant convicted for aiding and abetting a crime of violence to be guilty, under <u>Johnson I</u>, as if he were the principal.  <u>E.g.</u>, <u>In re Colon</u>, 826 F.3d at 1305 ("Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal committing Hobbs Act robbery.  And because the substantive offense of Hobbs Act robbery has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . .  then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (internal citation and quotation marks omitted)).  At least one court has applied this logic specifically to Section 113(a)(3).  <u>United States v. Walking Eagle</u>, Criminal Docket No. 07-50 (BMM), 2017 U.S. Dist. LEXIS 190006, at *5-6 (D. Mont. Nov. 16, 2017) (finding that aiding and abetting an assault under Section 113(a)(3) constitutes a crime of violence).

A different view would be inconsistent with the Second Circuit's most recent opinion interpreting Johnson I.  In Stuckey, 2017 U.S. App. LEXIS 25737, at *16, the Second Circuit explained that "ACCA requires only a threshold intent to engage in criminal conduct"; it does not require the defendant to have participated or even intended all elements of the crime, such as the brandishing of a gun or subsequent violence (when the underlying crime is a robbery).  Id.  This low bar is easily cleared when a defendant aids and abets a crime, which the Supreme Court has explained means he "intends to facilitate that offense's commission" and does so "knowing its extent and character."  Rosemond v. United States, 134 S. Ct. 1240, 1248 (2014).[7]

In short, a defendant who uses—or aids and abets the use of—a dangerous weapon to assault someone intending bodily harm meets the Johnson I force requirement. This Court should therefore join the growing list of judges who have unanimously found § 113(a)(3) to be a violent felony or a crime of violence.

B.    The Defendant Is a "Career Offender" Under the Guidelines Because He Has Committed Two Crimes of Violence in the Last 15 Years

Because the defendant has been convicted of at least one crime of violence[8] and because he was over 18 years old, he could be designated a "career offender" under the

---

[7] Relatedly, courts in the Second Circuit has held that conspiratorial conduct qualifies as a crime of violence or violent felony in the same way that the substantive crime would.  See, e.g., United States v. Biba, 219 F. Supp. 3d 347, 354 (E.D.N.Y. Nov. 7, 2016) (explaining that the Second Circuit's holding that a "conspiracy to commit a recognized crime of violence is itself a crime of violence was left undisturbed by Johnson"); accord Medina v. United States, 16-CV-5043 (JCF), 2017 U.S. Dist. LEXIS 15710, at *8-9 (S.D.N.Y. Feb. 3, 2017) (collecting cases).

[8] The defendant has been convicted of three crimes of violence in this case, both counts under 18 U.S.C. § 1951(a), and a discharge of a weapon under 18 U.S.C. §924(c).  In fact, in charging the jury the Court quoted Johnson I's standard for force when instructing the jury on the definition of "physical violence."  See Trial Tr. 718:15-17 (after stating that the first element of Count Two is finding that the defendant "threatened or committed physical violence," defining physical violence as requiring the "use

Guidelines.  U.S.S.G. § 4B1.1(a).  Under the current version of the Guidelines—which

governs because it will presumably still be in effect at sentencing, 18 U.S.C. § 3553;

U.S.S.G. § 1B1.11; United States v. Jones, 871 F.3d 150, 155 n.3 (2d Cir. 2017)[9]—there are

two parts of the definition of a "crime of violence."  See U.S.S.G. § 4B1.2(a).  The first part,

the force or element clause, is identical to that quoted above for ACCA (requiring the felony

to have "as an element the use, attempted use, or threatened use of physical force against the

person of another").  The second part has replaced the residual clause found in the previous

version of the Guidelines (and upheld in Beckles v. United States, 137 S. Ct. 886, 892

(2017)).[10]  It provides that a felony is a crime of violence if it is a "murder, voluntary

manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson,

---

of force, which is force capable of causing physical pain or injury to another person.").  In addition, as
explained above, the jury found that the defendant discharged a weapon when it convicted him of Count
Three—a crime that by definition requires the use of force, not just capable causing pain (as required by
Johnson I), but of killing.  Cf. Application Notes to U.S.S.G. § 4B1.2 (explaining that a prior violation of
18 U.S.C. § 924(c) is, itself, a crime of violence if the underlying offense was a crime of violence).

[9] The proposed amendments for the 2017 version of the Guidelines, available at
https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-
amendments/20170824_rf_proposed.pdf, do not appear to be relevant.

[10] The residual clause (removed effective August 1, 2016) provided that a crime of violence
includes any offense that "involves conduct that presents a serious potential risk of physical injury to
another."  If the residual clause were still in effect, the defendant's South Carolina robbery and federal
assault would easily be covered.  See, e.g., Jones, 871 F.3d at 157 ("Plainly, a robber who forcibly steals
property from a person or from his immediate vicinity, while armed with a deadly weapon, engages in
conduct that presents a serious potential risk of physical injury to another."); Villanueva v. United States,
191 F. Supp. 3d 178, 184 (D. Conn. 2016) ("[T]he Residual Clause's plain language would readily have
encompassed a crime such as first degree assault with a minimum of statutory analysis, insofar as first
degree assault, which has 'physical injury' as an element, necessarily 'involves conduct that presents a
serious potential risk of physical injury to another.'").  The prior version of the Guidelines also
enumerated "robbery" and "aggravated assault" in its Application Notes to § 4B1.2, providing an
independent reason why both convictions would still have counted as crimes of violence.  See, e.g.,
Walker, 596 F.3d at 445-46 (finding Shameke Walker's South Carolina robbery to be a crime of violence
in part because of the prior Application Note, which listed robbery).  There is therefore no ex post facto
violation applying the manual in force at sentencing rather than the one that governed when the defendant
committed the armed robbery in June 2015.  See Peugh v. United States, 133 S. Ct. 2072, 2078 (2013).

extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."

Because the defendant's New York robbery conviction is too old to count for purposes of the Guidelines, see U.S.S.G. § 4A1.2(e), only the South Carolina robbery and the federal assault could be countable crimes of violence.  The government respectfully submits that for the reasons that those crimes constitute violent felonies under ACCA, they also satisfy the Guidelines' force clause.  See, e.g., United States v. Rios, 2017 U.S. App. LEXIS 24320, at *3-4 (citing with approval the conclusion that an assault conviction that was considered a violent felony under ACCA must have also been a crime of violence under the Guidelines).

Both convictions are crimes of violence for the independent reason that they are listed as such under Section 4B1.2(a)(2), which specifically identifies robbery and aggravated assault.  "Where the basis for categorizing a prior conviction as a crime of violence is that the offense is specifically enumerated as such in the Career Offender Guideline or its commentary, we undertake the categorical approach by comparing the state statute to the generic definition of the offense."  Jones, 871 F.3d at 158.  In Jones, the Second Circuit concluded that a New York First Degree Robbery, which criminalizes stealing property while armed with a deadly weapon—and indeed "robbery of any degree" in New York—was no broader than the generic robbery identified in the Guidelines.  Id. at 158.  The Court "easily conclude[d]" that the generic definition of robbery, which even encompassed the "peaceful assertion of dominion followed by the use or threat of force" was broader than New York's definition of its robberies.  Id. at 158-159.

26

South Carolina Strong Arm robbery similarly qualifies.  As explained above, South Carolina's law not only requires the threat or use of force, but also specifies that the defendant must have either been armed or credibly alleged to have been armed, and that he actually induced fear or intimidated the victim through a threat of bodily harm.

In fact, this Court, in Walker I, has already concluded that the defendant's South Carolina Strong Arm robbery was a crime of violence.  Although this holding predated both Johnson decisions, it remains intact.  The defendant appealed his sentence in Walker I, arguing, among other things, that the Court erred in finding the robbery to be a crime of violence.  The Second Circuit rejected this argument, explaining that the "definition [of South Carolina Strong Arm robbery] corresponds in all material respects to the generic definition of robbery."  Walker, 595 F.3d at 446.  This holding is binding because it has not, and could not have, been abrogated by Johnson I or Johnson II—it does not rest on the interpretation of the force clause or on ACCA's residual clause.

Federal assault under Section 113(a)(3) also fits comfortably within the generic definition of "aggravated assault."  The common law definition of aggravated assault is a criminal assault "accompanied by either the intent to cause serious bodily injury to the victim or the use of a deadly weapon."  United States v. Morales-Alonso, 2018 U.S. App. LEXIS 345, at *8 (11th Cir. 2018) (internal quotation marks omitted).  The Guidelines define "aggravated assault" in Application Notes to U.S.S.G § 2A2.2 as a

> [F]elonious assault that involved (A) a dangerous weapon with
> intent to cause bodily injury (i.e., not merely to frighten) with
> that weapon; (B) serious bodily injury; (C) strangling,

suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony.[11]

All of these definitions encompass an assault that, as Section 113(a)(3) requires, involves striking a person with intent to cause bodily harm while using a dangerous weapon.  Cf. United States v. Ucles, 619 F. App'x. 295 (5th Cir. 2015) (per curiam) (finding Minnesota's second degree assault, which criminalizes assault "with a dangerous weapon" without requiring bodily harm, to fit within the generic definition of aggravated assault).[12]

Accordingly, the government respectfully submits that even if the Court does not find the defendant's South Carolina Strong Arm robbery and federal assault to fit within the force clause of the definition of "crime of violence," that it nevertheless find the defendant a career offender because both convictions fit within the enumerated clause of the 2016 Guidelines.

C.      Counts One and Two Were Properly Submitted And Decided By the Jury

Finally, the Court has directed the parties to address whether Count Two was duplicative of Count One—in other words, whether the indictment was multiplicitous.  See generally United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999).  It was not.

---

[11] Consistent with these definitions, the Model Penal Code provides that a person is guilty of aggravated assault if he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

Assault, Model Penal Code § 211.1.

[12] In addition to the general principal articulated above that aiding and abetting a federal crime exposes a defendant to the same liability under Johnson I, the Guidelines also specifically provide in its Application Notes to U.S.S.G. § 4B1.2 that a crime of violence includes "offenses of aiding and abetting."

Prior to trial and after the submission of the evidence, the defendant continued to object to Counts One and Two charged together—the former charging the robbery and the latter charging the violence committed in furtherance of that robbery.  The Supreme Court in Scheidler v. National Organization for Women, 547 U.S. 9, 22 (2006) explained that both charges could be brought simultaneously if the defendant "injured bystanders during a robbery."  Under that scenario, the Supreme Court explained, the government can "charge that defendant with the Hobbs Act crime of robbery and the separate Hobbs Act crime of using violence in furtherance of the robbery."  Id.  See also United States v. Williams, 179 F. Supp. 3d 141, 149 (D. Me. 2016) ("Section 1951 may be violated by committing one of three different acts—robbery, extortion, or committing or threatening physical violence as described in the statute.").

Although this Court expressed some misgivings about the purpose of bringing both charges—though appreciating that it provided a "safety device for the government," Hr'g Tr. 8:21—it recognized that there was also no legal basis to dismiss either count.  Id. at 7:25-8:2.  It is indeed difficult to conceive of a case that more perfectly aligns with the scenario described in Scheidler: a robber (the defendant) injured a bystander (the security guard) during the robbery, which permitted the government to charge in the same indictment two Section 1951(a) crimes, for the robbery and for the violence used in furtherance of the robbery—just as the Supreme Court envisioned.  The Supreme Court has therefore already concluded that the charged offenses were not the "same in fact and law," which is the *sine qua non* of multiplicity.  United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003).

Pressed again at the conclusion of the case to provide the rationale for submitting both counts to the jury in this particular case, the government explained that if the

29

defendant had robbed the store without shooting (and wounding a victim), this robbery might have only been chargeable under one count of Section 1951(a).  But the defendant—in what can be viewed as a second episode of the robbery—decided to discharge his weapon as he attempted to flee.  As a result, under the plain reading of the statute and Scheidler, the government was entitled to bring a second count under Section 1951(a), for the commission of physical violence in connection with the robbery.  Trial Tr. 543:18-544:23.  The Court appeared to agree and charged the jury accordingly.

The Court did not break new ground in submitting both counts to the jury. Defendants in United States v. Dervishaj et al., Criminal Docket No. 13-00668 (ENV) were similarly charged and convicted, including one defendant, Redinel Dervishaj, following a jury trial.[13]  In sum, there is no legal basis to conclude that the charges were multiplicitous.

There is also little practical effect on sentencing—the final question raised by the Court in its Order because the defendant's sentencing exposure will be driven by other charges.  He faces a maximum term of imprisonment of life by virtue of his conviction of Count Three (for using a firearm in furtherance of a crime of violence).  See United States v. Johnson, 507 F.3d 793, 798 (2d Cir. 2007).  His mandatory minimum sentence is also determined by Count Three, as well as by the Court's finding of the defendant's status under ACCA in connection with Count Four (for his unlawful possession of ammunition).  Count Three frames the Guidelines range too—360 months to life for a "career offender" who has been convicted of a § 924(c) charge.  See U.S.S.G. § 4B1.1.

_____

[13] Like the defendants in this case, the defendants in Dervishaj were charged for two crimes derived from Section 1951(a), though in Dervishaj the second charge—other the commission of violence—was extortion, rather than robbery.

IV.      <u>CONCLUSION</u>

        For the foregoing reasons, the government respectfully requests that the Court find the defendant to be an armed career criminal under ACCA and a career offender under the Guidelines, and that it not dismiss Count Two, which it properly submitted to the jury.

Dated: Brooklyn, New York
       January 12, 2018

                                 Respectfully submitted,

                                 RICHARD P. DONOGHUE
                                 United States Attorney
                                 Eastern District of New York
                                 271 Cadman Plaza East
                                 Brooklyn, New York 11201

                  By:     <u> /s/ Andrey Spektor            </u>
                                 Andrey Spektor
                                 Lindsay K. Gerdes
                                 Assistant U.S. Attorney
                                 (718) 254-6475/6155