1

2 UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
3 --------------------------------x
                                          15-CR-284(DLI)
4 UNITED STATES OF AMERICA,
                                          United States Courthouse
5           Plaintiff,                    Brooklyn, New York

6           -against-                     May 3, 2017

7 QUMILLE LOVE,

8           Defendant.

9 --------------------------------x

10          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
              BEFORE THE HONORABLE DORA L. IRIZARRY
11             UNITED STATES CHIEF DISTRICT JUDGE

12

13 APPEARANCES

14 For the Government:        BRIDGET M. ROHDE, ESQ.
                             Acting United States Attorney
15                           Eastern District of New York
                             271 Cadman Plaza East
16                           Brooklyn, New York 11201
                             BY:  ANDREW GILMAN, AUSA
17

18 For the Defendant:        FEDERAL DEFENDERS OF NEW YORK
                             One Pierrepont Plaza
19                           Brooklyn, New York, 11201
                             BY:  PETER KIRCHHEIMER, ESQ.
20
    Court Reporter:          Georgette K. Betts, RPR, CSR, OCR
21                           Phone:  (718)804-2777
                             Fax:    (718)804-2795
22                           Email:  Georgetteb25@gmail.com

23 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

24

25

```
 1                THE COURT:  Please be seated.  You can call the
 2   case.
 3                THE COURTROOM DEPUTY:  Criminal cause for
 4   sentencing, docket number 15-CR-284.  United States versus
 5   Love.
 6                Please state your appearances.
 7                MR. GILMAN:  Good morning, Your Honor, Andrew Gilman
 8   for the United States.  With me at counsel table is Jared
 9   Maneggio from the U.S. Probation Department, as well as an
10   intern from my office, Diane Hu.
11                MR. KIRCHHEIMER:  Federal Defenders by Peter
12   Kirchheimer for Mr. Love.  This is Mr. Love sitting next to
13   me.
14                Good morning, Judge.
15                THE COURT:  Good morning to everyone.
16                Can I have the spelling of the last name of the
17   intern, please.
18                MS. HU:  H-U.
19                THE COURT:  Spell your first name, traditional
20   spelling D-I-A-N-E.
21                MS. HU:  Yes, Your Honor.
22                THE COURT:  And is there any objection to the
23   student intern sitting in at the sentencing?
24                MR. KIRCHHEIMER:  No, Your Honor, there is not.
25                THE COURT:  So a lot has happened since we were last
```

 1   here, both in the area of Supreme Court case decisions and

 2   Second Circuit case decisions and briefing in this case.

 3           So I know when we were last here in October,

 4   Mr. Love -- I know it's a lot to remember, it's kind of far

 5   back to remember -- I had explained to you how we will

 6   proceed, but I think given that most of your prior contact

 7   with the justice system has been through the state court, I

 8   would feel more comfortable just explaining to you again how

 9   we're going to proceed and because I have received additional

10   submissions from counsel, I want to make sure that we're all

11   on the same page and that we have all the same submissions, so

12   I will go through that as well.

13           And the first thing I'm going to do, I'm going to

14   start with that, putting on the record everything that I've

15   received and considered for that reason to make sure that all

16   of us have copies of what's been submitted.  And there were

17   still, of course, outstanding objections to the sentencing

18   guidelines in the presentence report.

19           I think in terms of anything else there were no

20   objections --

21           MR. KIRCHHEIMER:  There were not, Judge.

22           THE COURT:  -- I'm correct about that?

23           But the objections to the guideline range obviously

24   have to be resolved by the Court, that's part of the subject

25   of the additional briefing that we had and also part of the

1    subject of the additional case law that has emerged since we

2    were last here.  And before I can impose sentence, as an

3    initial step I have to do my very best to calculate that

4    guideline range and hopefully get it right because that is a

5    first step.  But the guidelines are advisory, they are not

6    binding on the Court.

7         The Court has to consider whether there are any

8    departures that are appropriate either within that advisory

9    guideline system or pursuant to Title 18 of the United States

10   Code Section 3553(a) in applying those factors that are in

11   that section, determining whether or not a variance from the

12   guidelines is appropriate.  In other words, a sentence outside

13   of the guidelines is appropriate.

14        In that regard I'll give the attorneys an

15   opportunity to address the Court.  You also have a right to

16   address the Court, if you wish to address the Court I will

17   give you an opportunity to do that, and then after we get

18   through all of that is when I will impose sentence.

19        Do you understand that procedure, Mr. Love?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  All right.  So we have, of course, the

22   presentence report which was prepared or disclosed on

23   September 9th, 2016.  It also has a sentence recommendation

24   and of course that presentence report was prepared with the

25   sentence guideline manual that was in effect at the time and

1    appropriately so the guideline manual from 2015.  I mention

2    that because we are going to have a lot discussion about which

3    guideline manual applies here.

4            There is the defendant's objections to the

5    presentence report dated September 14, 2016, the government's

6    letter of September 23rd, 2016 indicating no objections to the

7    presentence report.  The government's response to defendant's

8    objections to the presentence report by letter dated

9    September 28, 2016.  There is an addendum to the presentence

10   report issued by probation that was filed October 4th of 2016

11   and, in essence, probation disagreed with the objections to

12   the guideline range raised by defense counsel.  And then there

13   was additional information that was provided to supplement the

14   presentence report about your own personal background, some of

15   it was verification of certain information including your

16   medical history documenting drug addiction and hospitalization

17   for that, also other medical issues, injuries that you have

18   sustained over time, and also mental health treatment that

19   you've had over time.  Most of it occurred around 2008

20   according to that addendum.

21           There is the defendant's sentencing memorandum of

22   October 6 of 2016 and there were exhibits that were attached

23   which were the objections to the presentence report and some

24   photographs, I guess a video surveillance from the bank

25   robberies.  There is the government's sentencing memorandum

1    dated October 17th.

2              I note that when we were here on October 24th the

3    Court accepted Mr. Love's guilty plea to the entire

4    indictment, Counts One, Two and Three.

5              There is the defendant's supplemental briefing from

6    March 15th, there was a brief letter, this is post-Beckels.

7    There is a more in-depth brief that was provided by the

8    defense dated March 27th and the March 15th letter is attached

9    as an exhibit, and then the government's responsive brief

10   dated April 12th of 2017.

11             So that's everything that I have received.  Is that

12   everything I should have, Mr. Gilman?

13             MR. GILMAN:  Yes, Your Honor.

14             THE COURT:  Mr. Kirchheimer?

15             MR. KIRCHHEIMER:  Yes, Judge.

16             THE COURT:  And, Mr. Love, did you have an

17   opportunity to -- first of all, did you get a chance to see

18   these documents?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  Did you get a chance to review them with

21   your attorney?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Do you understand the objections that

24   were made by your attorney?  I know it's a bit complicated.

25             THE DEFENDANT:  Yes, ma'am.

```
 1              THE COURT:  Aside from the objections that were
 2   raised by your attorney, in connection with anything else
 3   that's in the presentence report, especially anything
 4   concerning your prior background, anything like that, is there
 5   anything that you think still needs correcting?
 6              THE DEFENDANT:  No, ma'am.
 7              THE COURT:  So I have reviewed very carefully the
 8   parties' submissions and of course additional case law and
 9   unless there is something that's not covered in the papers
10   that the parties would like to address with me, I'm prepared
11   to rule on the objections that were made to the presentence
12   report.
13              MR. GILMAN:  The government is happy to rest on the
14   papers at this time, Your Honor.
15              MR. KIRCHHEIMER:  Only one.
16              THE COURT:  Only one.
17              MR. KIRCHHEIMER:  Only one suggestion, Judge, which
18   is that it's -- again, I keep forgetting the name of the case,
19   after -- in the early days post-*Booker*, Judge Newman wrote a
20   decision about the application of the advisory guidelines and
21   did say that if in cases where it was extraordinarily
22   complicated to resolve the guidelines issues and where the
23   guidelines weren't necessarily going to be followed, it was
24   not necessarily necessary to do so.  And so I would suggest to
25   the Court that one manner of proceeding --
```

1          THE COURT:  You're talking about a case prior to

2  *Dorvee*?

3          MR. KIRCHHEIMER:  Oh, yes, Judge.

4          THE COURT:  Like around 2006.

5          MR. KIRCHHEIMER:  2006 or '7.  It starts with how

6  are we going to proceed in the Second Circuit with the

7  guideline cases, but the point is if it's not necessary to the

8  sentence and if it's too complicated, you don't have to

9  resolve the guidelines question.

10         My argument in -- if we lose on the career offender

11  issue, my argument will then be that even if he were to be a

12  career offender, the Court shouldn't apply the career offender

13  guidelines because of the nature of the history, even if it's

14  more legally applicable, it's inappropriate for him.  So --

15         THE COURT:  I don't think that any of the case law

16  that's happened that's been handed down in the intervening

17  period does away with the case law both from the circuit and

18  the Supreme Court that says where the Court has some

19  disagreement with either the policies embodied in the

20  guidelines or does not believe -- for example, with the crack

21  guidelines, which was *Gall* or *Dorvee* which was the child porn

22  guidelines where the Court believes that there is no empirical

23  data to support the policies that are embodied in that

24  guideline, that the Court can certainly depart from them under

25  a policy reason, but also the Court still has the obligation

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    under 3553(a) to consider all of those factors which still

2    include the policy considerations embodied in the guidelines

3    obviously, which are advisory, but that the Court can still

4    vary for any of the number of reasons that are listed in that

5    statute including the nature and circumstances of the offense,

6    which is a lot of the argument --

7                MR. KIRCHHEIMER:  Right.

8                THE COURT:  -- that you're making, and also the

9    history and characteristics of the defendant before the Court.

10   None of these cases really change that --

11               MR. KIRCHHEIMER:  Absolutely, Judge.  All --

12               THE COURT:  -- and can change that procedure.

13               MR. KIRCHHEIMER:  All I was suggesting was that if

14   you had decided ahead of time that you were going to find that

15   that guideline was too harsh for Mr. Love's conduct, that you

16   would not have to resolve the issue of the legal applicability

17   if you decided ahead of time that factually it wasn't

18   appropriate in this case.  That's all.  It's a way out.

19               THE COURT:  I understand your point.  I have some

20   reservations about that because, as you well know, right after

21   *Booker* was decided there was just a lot of guesswork going

22   around as to how *Booker* was actually going to be applied.  And

23   I think the first case that really gave us some real guidance

24   within the circuit was Reena Raggi's opinion in *Jones* from

25   2006, that basically said this is the three-step process --

```
 1              MR. KIRCHHEIMER:  Right.

 2              THE COURT:  -- that you have to go through to do

 3    that.  But even since then, right, there has been a lot of

 4    clarification, if you will, both from the circuit and from the

 5    Supreme Court as to whether, for example, the guidelines are,

 6    per se, reasonable.  Obviously, they are not per se

 7    reasonable.  And whether the Court can, as I said before, have

 8    policy disagreements with the guidelines and veer away from

 9    the guidelines and vary.

10              And that's happened in a lot of areas also with

11    economic crimes, for example, not just child pornography, but

12    economic crimes.  Always of course staying within the bounds

13    of what the statutory limits are whether there was a minimum

14    or a maximum sentence, usually there is a maximum sentence, so

15    always staying within the bounds of that.

16              So I'm a little loath to or reluctant -- loath is

17    maybe too strong a word, but reluctant to just toss out the

18    guidelines with the bath water and feel that nonetheless I

19    think the cases have consistently said that as a first step --

20    and that's *Gall*, right?  You take that language from *Gall*,

21    that as initial matter, as a benchmark, the Court has to

22    calculate the guidelines and then you take off from there.

23    Whether you disagree or you want to vary or you want to

24    depart, then that's where the next part of the tough work --

25    because it's all tough work but that's where the next part of
```

 1    the tough work really comes in.

 2              MR. KIRCHHEIMER:  Other than that suggestion, Judge,

 3    I have nothing further to add to the legal argument about

 4    whether the career offender guideline should apply or not.

 5              THE COURT:  Thank you.  First of all, I do want to

 6    thank both counsel for your very well drafted briefs, really

 7    appreciate it.  It's a tough issue and the fact that you all

 8    took such care and took the time to extrapolate your views and

 9    to provide authority for your various positions is greatly

10    appreciated by the Court.

11              So *Beckels* really changed things and as it's

12    acknowledged by the defense in the subsequent briefing,

13    post-*Beckels* in some ways -- and maybe this is too strong a

14    phrase -- sort of took the wind out of your sails as far as

15    the validity of residual clause.  So we're sitting here at a

16    point in time where the guideline that's at issue is the

17    definition of the terms that are used in Section 4B1.1 of the

18    guidelines, and I'm referring specifically to guideline 4B1.2

19    of the guidelines which contained the definitions of the term

20    of the crime of -- of the term of crimes of violence, all

21    right.  That's pertinent here in two ways.  Because the

22    defense argument -- and feel free to interrupt me,

23    Mr. Kirchheimer, if I'm getting your argument wrong, there are

24    two arguments essentially that are put forth by the defense,

25    which is number one, that the bank robbery to which Mr. Love

1  pled guilty under 18 U.S.C. Section 2113(a) is not a crime of

2  violence.  That's important because in order for the Court to

3  find, Mr. Love, that you are a career offender, the Court

4  first has to make a determination that the crime that you

5  committed is a crime of violence under the ACCA, under the

6  Armed Career Criminal Act.  So that's one question that the

7  Court has to determine.

8          MR. GILMAN:  Sorry, Your Honor.

9          THE COURT:  Not ACCA, I'm sorry.  But --

10         MR. KIRCHHEIMER:  Yes.

11         THE COURT:  -- under the pertinent guideline.

12         MR. KIRCHHEIMER:  The Career Offender Guideline.

13         THE COURT:  The Career Offender Guideline, I'm sorry

14  I misspoke.  Thank you.  Which again is 4B1.1.

15         So the second point is that your previous state

16  court convictions for robbery, you have several for robbery in

17  the third degree, robbery in the second degree, and I think an

18  attempted robbery in the second degree, also don't fall under

19  the definition of crimes of violence and, therefore, don't

20  support the career offender finding.

21         Do I have it in a nutshell?

22         MR. KIRCHHEIMER:  Yes, Judge.

23         THE COURT:  A lot of the earlier arguments stem from

24  the contention that the residual clause of the relevant

25  guideline was invalid given the Supreme Court's decision in

1   2010 in *United States versus Johnson*, reported at 559 U.S.

2   133, or *Johnson* 1.  Then there was a second decision by the

3   Supreme Court, *Johnson* 2 in 2015.  The question of whether or

4   not the definition of violent crime was unconstitutionally

5   vague though had not been decided by either of those two

6   cases.

7           The Second Circuit had before it that issue or

8   related issue in U.S. versus *Corey Jones* and it vacated its

9   decision pending the Supreme Court's decision in *United States*

10  versus *Beckels*, which was just decided a month or two -- a

11  couple of months ago.  Very recently, this year 2017.

12          The Supreme Court -- right, I'm sorry.  So *Johnson* 1

13  addressed the force clause and *Johnson* 2 addressed the

14  residual clause.

15          *Beckels* addressed the viability of the sentencing

16  guideline and its definition of violent crime.  And in

17  summary, the Supreme Court held that that guideline was not

18  void for vagueness.  So the guideline is still a valid

19  guideline.  As such, to the extent that the defense has argued

20  that the application note to that guideline doesn't apply

21  because it's an invalid guideline, no longer holds water

22  because the Supreme Court has spoken and it has said that it

23  is a valid guideline and the application note applies.  The

24  application note clarifies that certain enumerated offenses,

25  which include -- and it has a whole laundry list under

1     Application Note 1, includes the crime of robbery. To the

2     extent that the defense has posited an argument that an

3     ex-post facto application -- an inappropriate ex-post facto

4     application would occur if the Court applied the 2016

5     guideline manual which got rid of the residual clause in the

6     Career Offender Guideline and simply enumerated what are

7     considered crimes of violence no longer applies, because in

8     essence the 2014 guideline manual with the application note

9     results in the same definition.

10          MR. GILMAN: Your Honor, these crimes I think --

11     2014, I apologize, Your Honor.

12          THE COURT: The 2014, I have the 2014 guideline up

13     here and Application Note 1 says for purposes of this

14     guideline, crime of violence and controlled substance offenses

15     include the offenses of aiding and abetting, conspiring and

16     attempting to commit those such offenses. And then crimes of

17     violence includes murder, manslaughter, kidnapping, aggravated

18     assault, forceable sex offenses, robbery, arson, it has more

19     enumerated offenses. And it says, other offenses are included

20     as crimes of violence if, A, that offense has an element of

21     use, attempted use or threatened use of physical force against

22     the person of another, or B -- that doesn't apply. It talks

23     about the use of explosives.

24          MR. GILMAN: Thank you, Your Honor.

25          THE COURT: So in the argument with respect to the

1    ex-post facto result if the 2016 guidelines were applied, the

2    argument was that the 2014 guidelines manual would apply

3    because Mr. Love's crimes occurred in an early part of 2015,

4    so that would be the guideline manual that would be in effect

5    at the time the offense was committed.  So that's why we're

6    talking about the 2014 guideline manual.

7              I'm just presenting in summary form the reasons for

8    the Court's decision today because, of course, at the time of

9    sentencing the Court is obligated to state its reasons on the

10   record, but the Court intends to file a written opinion to

11   more fully explain the decision.  I'm sure you'll get a copy

12   of it, Mr. Love, okay.

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  So there being no ex-post

15   facto application by using -- or result by the Court using the

16   2015 guideline manual, that's the guideline manual that's in

17   effect today and that's the manual that the Court will use.

18             But the analysis doesn't stop there, right, because

19   there is still the argument as to whether or not bank robbery

20   is a crime of violence, because that's the first step in the

21   career offender finding.  Notably, neither side cited to any

22   cases in that regard.

23             The Court found two cases that address this issue,

24   one is a summary order from the Second Circuit.  The other is

25   a full decision.  Both of them, notably -- it's odd all these

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    cases are named *Johnson*, but it's *Leonard Johnson* versus the

2    *United States*, it's a Second Circuit case decided February 25

3    of 2015, and that is cited at 779 F.3d 125.  And there at

4    pages 128 to 129 the Court says the following -- and that was

5    in connection with a conviction for being a felon in

6    possession of a weapon as well as bank robbery.  Using the

7    firearm during and in connection with a crime of violence.

8    And apparently there were several decisions that had been

9    rendered by the circuit in the history of this case.  There

10   the Court held that among the crimes of violence that may

11   serve as a predicate for a Section 924(c) conviction, the

12   firearm conviction, are the bank robbery, which is the 2113

13   subdivision (a) robbery, and armed bank robbery offenses

14   charged against *Johnson* in Counts One and Two.

15           And then, notably, in the case against *Leonard*

16   *Johnson* he had gone to trial, the jury convicted him of all of

17   the charged offenses and on appeal the circuit vacated the

18   conviction for the unarmed bank robbery because they said it

19   was a lesser included offense of the armed bank robbery and so

20   it was a duplicate.  In other words, that the jury voted for

21   the same crime twice in essence, so they vacated the simple

22   bank robbery.  However, that didn't change their finding that

23   that bank robbery was a crime of violence.

24           And in another decision decided after *Johnson* 2,

25   after the Supreme Court decision in *Johnson* 2, this is a

1    summary decision, *United States* versus *Maslar*, M-A-S-L-A-R,

2    which can be found at 663 Federal Appendix 59.  It was decided

3    October 5th, 2016.  In that case the defendant, like you,

4    Mr. Love, pled guilty to bank robbery, let's call it simple

5    bank robbery under 18 U.S.C. Section 2113(a).  And there too,

6    there was a challenge that was presented by the defendant to

7    the district court's findings that that bank robbery charged

8    was a crime of violence and the appellate court found that

9    there was no error in that finding.  And there a lot of the

10   same arguments that are raised here were raised by the

11   defendant, and the Court said on page 61, we conclude that

12   *Maslar*'s interpretations of the first clause of 18 U.S.C.

13   Section 2113(a), in arguing that a conviction under that

14   clause is not categorically, quote, a crime of violence, end

15   of quote, or at least subject to dispute if not altogether

16   unpersuasive.  *Maslar* cites no authority that really supports

17   either of the interpretations of 18 U.S.C. Section 2113(a)

18   scope.  And in that case -- and the provision includes no

19   language clearly indicating that a defendant can be convicted

20   if he used, quote, force and violence or intimidation, end of

21   quote, directed only at property or in the absence of intent,

22   as *Maslar* suggests.  So the circuit has maintained that bank

23   robbery under 2113(a) is a crime of violence.

24           Then we address the second prong of the defense

25   objections to the presentence report which is whether or not

1    the crime of robbery under New York law is a violent crime.

2    And it seems to me that that is foreclosed now under the 2016

3    guideline because robbery is listed as an enumerated offense.

4    Notwithstanding that, it seems to this Court that any

5    arguments that are based on the Second Circuit's vacated

6    decision in *Corey Jones*, not only is it not persuasive, it

7    actually invites the Court to speculate as to what the Second

8    Circuit would do.  Because the circuit expressly vacated that

9    decision to await the Supreme Court's decision in *Beckels*, so

10   we don't know how *Beckels* is going to influence the circuit's

11   decision in *Jones*.

12            That being said, the circuit has repeatedly stated

13   in all the cases that were cited by the government, and some

14   of those cases are as recent as 2015, where the circuit has

15   held that New York State robbery, including robbery 3, is a

16   violent crime.  And I'm aware of my colleague, Brian Cogan's

17   decision in U.S. versus *Terence Johnson* where he has followed

18   some other courts that have, including some other judges of

19   this Court, who have found that robbery in the third degree or

20   robbery generally under New York law is not a crime of

21   violence.  They all rely on these more than 20-year old cases

22   from the appellate division to the State of New York, and

23   again cites to all of these cases are going to be in my

24   opinion.

25            The government has cited to a more recent case from

1    the New York State Court of Appeals *People* versus *Jurgin*,

2    J-U-R-G-I-N, I believe is the spelling.  And I have to wonder

3    whether that opinion from the New York State Court of Appeals

4    doesn't call into question some of those prior appellate

5    division cases and whether that Court would have struck down

6    those robbery convictions as not being proper robberies to

7    begin with.  For example, the tapping, right, or the touching

8    might have been considered I think under the 2015 decision by

9    the New York State Court of Appeals, might have been

10   considered jostling, which is a misdemeanor.

11           But I also think some of these cases also miss the

12   point and I have to agree with some of the analysis by the

13   government, and certainly anyone who has grown up in a poor

14   neighborhood and has been the subject of any kind of robbery

15   or anywhere that you might have subjected it, it has to be a

16   frightening experience to be surrounded by a group of people

17   who are demanding your money and the only implication can be

18   is that if you don't give in that something terrible is going

19   to happen to you.  And that the only reason that nothing

20   happened to you is because you gave in and handed over the

21   money, which is generally what the cops say you should do

22   anyway in the event of a robbery is not resist, to avoid the

23   use of physical force, I think defies the reality of the

24   situations.  But I do think that there is some support even

25   under *Johnson* 1 and at least some of the explanation that the

1  Supreme Court gave or the description that they gave about

2  force.   I think that there is some justification I think for

3  upholding the circuit's determination that has, to date, been

4  unaltered that robbery is a crime of violence.

5       I understand, as my colleague Judge Cogan explained

6  in *Terence Johnson*, that the circuits, many of those

7  decisions, if not all of them, were summary orders, but after

8  2007 the circuit nevertheless, while they said that they don't

9  have precedential value, nevertheless did permit their

10 citation.   That means that there is some precedential value,

11 there is some persuasive value is one of the terms that we use

12 when it's not binding precedent, there is some persuasive

13 value and if I'm going to be persuaded by anybody I think I

14 would be more persuaded by the circuit than an appellate

15 decision.

16       So I find that robbery, at least as the law stands

17 now, robbery is a crime of violence.   Again, that's an

18 alternate reason.   I do find that under the 2015 -- excuse me,

19 the 2016 guideline manual because robbery is, at the minimum,

20 an enumerated offense, that the career offender -- that it is

21 a crime of violence applicable to the Career Offender

22 Guideline.

23       I am happy to accept your exception to my ruling.

24       MR. KIRCHHEIMER:  Very briefly.

25       THE COURT:  Yes.

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

 1          MR. KIRCHHEIMER:  Two discrete --

 2          THE COURT:  Again, this is going to be more

 3    elaborated in the opinion, this is just summary and --

 4          MR. KIRCHHEIMER:  On the ex-post facto and solely

 5    for preservation --

 6          THE COURT:  No, of course I understand.

 7          MR. KIRCHHEIMER:  On the ex-post facto issue

 8    basically the flaw in the ex-post facto, as I understand it,

 9    is that the Court is saying that because of the application

10    note in the 2014 guideline, the 2016 guideline doesn't change

11    the law.  So that's basically a finding that the

12    application --

13          THE COURT:  The net effect is that it doesn't change

14    it.

15          MR. KIRCHHEIMER:  Right.

16          THE COURT:  Because even in the concurrent strike of

17    Sotomayor, she says, well, then the application note

18    explains --

19          MR. KIRCHHEIMER:  Right.

20          THE COURT:  -- that, the clause.

21          MR. KIRCHHEIMER:  So my answer to that is two fold.

22    Again, very briefly because we're just talking preservation.

23          My answer is that number one, the 2014 application

24    note is arguably says that robbery is -- they're not saying

25    it's an enumerated crime, because it was an enumerated crime,

1  that's an interpretation of the residual clause in 2014.  The

2  residual clause being whatever it says, i.e., in the note a

3  robbery.  So I would argue that that note has the same

4  residual clause flaw as -- that we've been talking about.

5       Now since we're talking a guideline issue and since

6  we're talking post-*Beckels*, my claim that that residual clause

7  doesn't apply is not the constitutional claim, but it is the

8  claim made in my last set of papers, that if you find that

9  that language is unintelligible, void for vagueness because

10 it's unintelligible for ACCA purposes, you can't use it for

11 statutory purposes either and you can't say that robbery is a

12 crime of violence in the 2014 version by virtue of it being a

13 residual clause because the residual clause is, in the words

14 of the Supreme Court, hopelessly -- suffers from hopeless

15 indeterminacy.  So even if we are not arguing -- we're not

16 arguing with vagueness, you still can't rely on it for the

17 definition of robbery because -- in my words, it's

18 gobbledegook and so, therefore, it violates -- you can't set

19 the guideline based on something that's hopelessly

20 indeterminate.

21       THE COURT:  That wasn't the holding of the Supreme

22 Court.

23       MR. KIRCHHEIMER:  Right, no, I understand.  No, I'm

24 not saying -- I'm saying my same statutory argument applies to

25 the use of the 2014 guideline --

1          THE COURT:  I got it.

2          MR. KIRCHHEIMER:  -- and, therefore, my argument is

3    that the 2016 guideline is a substantive change, contrary to

4    my client's interest and, therefore, it violates the ex-post

5    facto and therefore you can't do that.

6          Argument number two on the same point is that, even

7    if I'm wrong as to that part, taking the 2016 robbery or the

8    2014 application note robbery, neither one of them is -- they

9    just use the word "robbery" and neither one is a categorical

10   robbery basically in terms of common law what a robbery has to

11   mean, so, therefore, the same analysis of those appellate

12   division cases you don't like, applies to that concept of

13   robbery as well.

14         And while we're just on the one slight point --

15         THE COURT:  I have to say just one thing because

16   having spent 23 years of my life in the state criminal justice

17   system as a prosecutor and then seven years as a judge and

18   doing appeals mind you, I have great difficulty with all these

19   arguments that say that robbery is not per se a crime of

20   violence at least in New York.  What it may be in another

21   state, I can't speak to.  But in New York.  And the reason is

22   that New York State differentiated between the crime of

23   larceny, which is still a taking from the person, right?

24   They're still takings from a person, right?  And the larceny

25   does not have any force or violence component, right?  So as a

Case 1:15-cr-00302-DLI Document 13 Filed 07/14/16 Page 24 of 46 PageID #: 1078

1  general matter, a pick-pocket is usually charged as a larceny,

2  it's not charged as a robbery.  And like some of the cases

3  talk about, you know, a jostling which sometimes a pick-pocket

4  might entail, the bump in the subway, I don't know will a New

5  Yorker think that force is a bump in the subway, probably not,

6  but -- so then the New York State legislature made a separate

7  crime of robbery and they included in there the use of force,

8  the term force by itself presumes a level of violence.  Are

9  there gradations of violence, absolutely.  There are

10 gradations of violence.  It also includes the threat of the

11 use of force, right?  And the use of violence.

12         So I have great difficulty sort of wrapping my head

13 around any notion that the crime of robbery is per se not a

14 crime of violence, and maybe that's just me.  There are

15 greater minds that, hopefully, will look at this and tell

16 me -- explain to me why I am wrong, but it seems to me that

17 you can't look at these crimes in a vacuum, right?  Because

18 the legislature spoke and the legislature may differentiated

19 between the crime that is a taking of the person that doesn't

20 involve any force.  And they've also included the crime of

21 extortion, right, which is another crime similar to the

22 federal crime where there might be some implied harm that will

23 come to a person in order to get them to give up the goods, so

24 to speak.

25         MR. KIRCHHEIMER:  Very briefly to finish the last

1  preservation point on those two -- those three appellate

2  division cases finding that robbery wasn't necessarily a

3  violent crime under *the Johnson* 1 definition.  I remind the

4  Court that that's not -- I mean, you know, I and my office

5  have been pushing that, but where we get it from is from the

6  language of *Corey Jones* and that part --

7          THE COURT:  But *Corey Jones* does not exist.

8          MR. KIRCHHEIMER:  Well, no, actually not --

9          THE COURT:  That's a problem.

10         MR. KIRCHHEIMER:  Actually not.  We are currently --

11         THE COURT:  It's in limbo.

12         MR. KIRCHHEIMER:  We submitted, you know, we're --

13         THE COURT:  No, I know it's been --

14         MR. KIRCHHEIMER:  We submitted briefs and, in fact,

15  some of the language in my papers I confess came from our

16  second brief in *Jones*.

17         THE COURT:  But you can't rely on the original --

18         MR. KIRCHHEIMER:  But --

19         THE COURT:  -- which can't even be found anywhere

20  because it was completely eliminated --

21         MR. KIRCHHEIMER:  But the --

22         THE COURT:  -- from the universe.

23         MR. KIRCHHEIMER:  -- the reason, Judge -- forget

24  about the residual clause, which is what it was talking about

25  and which is now all gone, but the reasoning of the import of

1  those three appellate division cases is still, I would argue,

2  is still valid reasoning and we'll see what happens once our

3  next set of papers in *Corey Jones* --

4          THE COURT:  I think -- and I haven't given the

5  government a chance to say anything, I don't know if you want

6  to throw anything in here.

7          MR. KIRCHHEIMER:  Number one they're not supposed

8  to.

9          THE COURT:  Is there anything that you would like to

10  say on behalf of the government?

11          MR. GILMAN:  Your Honor, just very briefly.  The

12  government is in agreement with the Court, in that there just

13  not exist -- there is not an ex-post facto violation here

14  because whether the Court considers either the current

15  guidelines, the 2016 guidelines, or the 2014 guidelines that

16  were in effect at the time of the crime, the result is the

17  same, in that New York State robbery qualifies as a crime of

18  violence categorically and also that the federal offense of

19  bank robbery under 2113(a) also qualifies as a crime of

20  violence.

21          THE COURT:  So I think the one thing we can all

22  agree on is that we really do need some clear guidance from

23  somebody higher up than the district court as to how to apply

24  all of these definitions and it has to be something that

25  really comports with common sense and the reality of the world

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    I think, and you know, not taken in a vacuum and taking into

2    account at least in New York and obviously the circuit has to

3    consider the case law as a whole in front of the circuit and

4    its prior case law, but within the context of all of those

5    larceny type cases where -- I mean, I don't think anybody has

6    issue with the fact that murder or attempted murder is a crime

7    of violence or kidnapping or anything of that sort, assault,

8    anything of that sort.  Where it comes in to is where you've

9    got this whole range of ways in which the crime of robbery can

10   be committed, right, range of ways in which larcenies can be

11   committed, range of ways in which extortion can be committed,

12   I think we do need to look at all of these different statutes

13   together to see what the intention is of the legislature, when

14   they pass these statutes what were they looking at, what was

15   their intent in order to come to a determination that this is

16   what it is, or adjust this categorical project.  Something has

17   to give here and I think what is clear is that we need some

18   good guidance on this and I'm hopeful that we will get it in

19   the future whether it's the *Corey Jones* case or any other case

20   that comes up either before the circuit or before the Supreme

21   Court.

22         MR. KIRCHHEIMER:  Again, very briefly my last point

23   in this area, it's sort of almost -- it's an illustrative

24   point rather than a legal point.  As part of the first

25   argument that federal bank robbery is not necessarily a crime

1    of violence, I would remind the Court of the facts of this

2    case.  Because if there ever was a suggestion that there isn't

3    violent physical force in the terms of *Johnson* 1 bank robbery.

4    In this case where my client goes up to the teller, presents a

5    note, which the government kindly gave us a copy of it which I

6    can hand up, saying this is an bank robber --

7              THE COURT:  You can hand it up.

8              MR. KIRCHHEIMER:  -- and nothing more.  There's

9    no --

10             THE COURT:  You have a copy of this I assume,

11   Mr. Gilman.

12             MR. GILMAN:  Yes, Your Honor.

13             MR. KIRCHHEIMER:  I got it from him.

14             I've also got -- I submitted my prior briefs in the

15   first brief the exhibits were a picture of my client --

16             THE COURT:  Yes.

17             MR. KIRCHHEIMER:  -- standing in line waiting to rob

18   the bank.

19             THE COURT:  Keep in mind -- I understand that and

20   you made that argument in the papers and obviously that's an

21   argument you can make in mitigation, but keep in mind as well

22   that the circuit certainly is aware of the fact that included

23   in the 2113(a) bank robbery cases are cases where notes were

24   used, where no guns were used, no weapons were used, where

25   perhaps just like this, there is no explicit, like, I have a

1    gun, in reality he didn't have a gun, or I have a bomb and

2    they really don't have a bomb or it's a fake bomb or any of

3    that.  I have to assume that the circuit is familiar with its

4    prior case law when it makes a statement that bank robbery

5    under 2113(a) is a crime of violence and there, too, you know,

6    perhaps some clarification is --

7         MR. KIRCHHEIMER:  In terms of threat and

8    intimidation, the absolutely last point here, remember, there

9    are three counts, one completed bank robbery --

10         THE COURT:  Two more attempts.

11         MR. KIRCHHEIMER:  -- and the two attempts, and then

12    the two attempts.  When the same thing happened, he handed up

13    the note, this is an bank robber and basically the tellers

14    laughed at him and he walked out.  So in terms of assessing

15    the inherent threat of that note, at least again -- and it's

16    not -- I mean, they're supposed to be talking categorically, I

17    don't know how much this matters, but in those last two

18    attempts it didn't appear to intimidate anybody because they

19    just said forget about it and he walked out.  So that is I

20    think --

21         THE COURT:  But that's what makes it an attempt.

22         MR. KIRCHHEIMER:  Yes.  But it's the -- but in terms

23    of whether or not bank robbery is a categorically violent -- a

24    crime of violent -- violent physical force, I argue that you

25    have to remember -- and it includes this kind of bank robbery.

1    And I have to say before the guilty plea in this case I

2    included the Second Circuit note cases in my first brief,

3    *Lawrence* and *Henson*, where there were notes and the court said

4    a note was sufficient because of intimidation.

5            THE COURT:  Right.

6            MR. KIRCHHEIMER:  So that in taking the guilty plea

7    in this case I had to research whether this was sufficient --

8            THE COURT:  That was sufficient.

9            MR. KIRCHHEIMER:  -- to amount to a bank robbery,

10   and it.  Is but that's why I find it extraordinarily ironic

11   that we're saying this is a violent crime when it was

12   committed in this manner when it was not.

13           THE COURT:  Understood.  Understood.  Given the

14   Court's ruling the guideline ranges calculated by probation

15   applies and that provides a total offense level of 29.

16   Mr. Love, whether he's a career offender or not, has a

17   Criminal History Category VI, I think he had a total of 22

18   criminal history points and there is a sentence guideline

19   range of 151 to 188 months, and even though that had been

20   calculated under the 2015 guideline manual, nothing has

21   changed in that regard and the numbers are still the same.  It

22   would have been the same in the 2014 manual as well.

23           So we get to that point, Mr. Love, where I give the

24   lawyers an opportunity to point out whatever factors they deem

25   are appropriate for the Court to consider in imposing

1  sentence.  I'll start with the government and,

2  Mr. Kirchheimer, if there is anything you want to add, as I

3  said I thoroughly reviewed your submissions, but if there's

4  anything else you want to add besides what you said here today

5  already and in your brief, of course I'll hear from you.

6  Mr. Gilman.

7        MR. GILMAN:  Thank you, Your Honor, just very

8  briefly.  The government submits that a guidelines sentence on

9  Count One is appropriate here.  That range being a sentence of

10  imprisonment from 151 to 188 months with any term of

11  imprisonment on Counts Two and Three to be served concurrently

12  with that sentence, guideline sentence on Count One.

13        The defendant --

14        THE COURT:  Are you saying they should run

15  consecutively to Count One?

16        MR. GILMAN:  Concurrently, Your Honor.

17        THE COURT:  Concurrently.  All counts to run

18  concurrently.

19        MR. GILMAN:  Yes, Your Honor.  And the defendant

20  does have an extensive criminal history, as Your Honor has

21  already recognized today.  Previously, in fact Your Honor has

22  sentenced the defendant for robbery and thus there is -- the

23  defendant seems to be undeterred in many ways by sentences,

24  the kind he's received and today's sentence would be

25  substantially more than that and thus would provide adequate

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    deterrents under 3553(a) factors.

2          That said, Your Honor, the government recognizes

3    that the defendant's bank robbery here, while bank robbery is

4    a serious crime, the defendant's bank robbery is on the scope

5    of the less serious one could possibly commit in the bank

6    robbery context and that is why the government is taking the

7    position it is today that a guideline sentence on just one

8    count of conviction would be appropriate.

9          THE COURT:  Thank you.  Mr. Kirchheimer, anything

10   you wanted to add?

11         MR. KIRCHHEIMER:  Just briefly, Judge, and it's the

12   same, I would ask that you -- you found him to be a career

13   offender and set -- found the Career Offender Guideline

14   appropriate.  I would ask that as a matter of departure or

15   more properly I think these days we're supposed to call it

16   variance, that the conduct here is more properly assessed by

17   the bank robbery guideline.  I've calculated in my papers that

18   the bank robbery guideline would be 84 months to 105, given he

19   pled to all three counts, reminding the Court that he pled

20   to -- the government offered him to plead just to the one

21   count, but included an appeal waiver, so he pled to all three

22   counts to preserve his right to appeal.  Had he pled to one

23   count that the government demanded of him, these guidelines

24   would have been 63 to 78 months.

25         I would argue that the Court should apply one of

1    those two -- or should vary down to one of those two

2    guidelines.  And the reason for that is exactly what we've

3    been talking about for the last six months in this case.  That

4    while the law -- the case now is that this bank robbery was,

5    in fact, a violent crime within the terms of the Career

6    Offender Guideline, everyone in this room agrees, I think -- I

7    think I've heard everyone say that they agree -- that this is

8    as non-violent a bank robbery as you can possibly have.  The

9    government just said that more or less, in my words not his, I

10   think that's been implicit in what the Court has said.  And

11   that even if legally the Career Offender Guideline is

12   appropriate, which again the law of the case now is that it

13   is, that it's just odd to apply the -- the logic of the Career

14   Offender Guideline is entirely appropriate.  That if you have

15   a repeated number of violent crimes you ought to get more

16   time.  I don't think anybody ever has assailed the logical

17   structure of the sentencing guidelines.  However, if the --

18   basically the doubling of the sentence range is based upon the

19   fact that Mr. Love is a violent criminal, I find that hard

20   given the facts of the case.  He's a man who walks up to

21   banks, not only these but the state court ones as well as in

22   the past and hands a note and says, in terms of the Woody

23   Allen movie, "this is a gub" -- well, he doesn't even say

24   that, he just says, you know, this is an bank robber.  I

25   submitted pictures of his posture, the fact that he's not

1    menacing, that he waited in line to do it.

2         And it is, I think, inappropriate to use the

3    violence enhancement to double his guidelines in such a

4    non-violently committed crime.  That's completely separate and

5    apart from, you know, all this -- all the *Beckels* and *Johnson*

6    stuff about whether it is or isn't, and that is agreeing that

7    the structure of the guidelines by having an enhancement for

8    these kind of repeated offenses is perfectly rational.  It's

9    just not rational to apply it to someone who is as non-violent

10   as him.  That's been my position in all these papers ever

11   since -- since the first set of papers we filed.  It's hard

12   now to remember when, I don't remember when those were.

13        I do have to say that I -- just taking my -- when we

14   did the plea allocution in front of the magistrate judge, when

15   we did the plea allocution I had to research the federal law

16   of bank robbery -- before that I hadn't done it in about 16

17   years -- to see if this was enough to -- if handing a note

18   saying this is an bank robber is enough to constitute --

19   legally sufficient to constitute a robbery.

20        And so I'd argue my ignorance as an example of how

21   unusually non-violent this crime was.  Again, I -- I,

22   unfortunately, found the federal cases which say a, you know,

23   note bank robbery is enough, so it is, but that's just another

24   example of how incredibly non-violent, non-threatening it was.

25        For those reasons I ask you to impose a sentence at

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    the bottom of one of the two guideline ranges, 84 to 105, or

2    63 to 78.  84 to 105 is what the guidelines would have been if

3    he were not a career offender, but he plead to three

4    robberies, two attempted robberies because of the enhancement

5    for grouping.  Or -- which was demanded -- which happened only

6    because we pled to the entire indictment because of the

7    government's insistence on an appeal waiver.  And that had he

8    pled to the one robbery only, you know, the price of wanting

9    to do an appeal was -- the guidelines would have been 63 to

10   78.  I would ask the Court to impose the bottom of one or the

11   other of those ranges because of the non-violent manner of the

12   commission of this crime.

13            THE COURT:  Thank you, Mr. Kirchheimer.  Mr. Love,

14   you have a right to make a statement to the Court, is there

15   anything that you would like to say?

16            THE DEFENDANT:  No, no, Your Honor.

17            THE COURT:  So we've been here for a while, we had a

18   lot of discussion.  Like I told you in the beginning, there's

19   a lot that the Court has to consider in determining what

20   sentence to impose.  Like I said, we have to start with the

21   guidelines even though they are advisory and not binding on

22   the Court and the Court is always hopeful it gets it right and

23   then that it's made the proper determination and that's the

24   Court's obligation to do that.

25            The Court has to consider whether any departures are

1  appropriate either above the guideline range or below the

2  guideline range.  I've considered any of the departures that

3  are contained in the guidelines, again, that are advisory and

4  finds that none are really applicable here, but the Court

5  doesn't stop at that analysis there.  The Court has to

6  consider the 3553(a) factors which we mentioned earlier and

7  which your attorney has mentioned as well.  And like I

8  mentioned to you before, those factors are essentially goals

9  of sentencing that should be achieved whenever a federal judge

10  imposes sentence and it is in the statute in 18 U.S.C. Section

11  3553(a).  That's where it gets its name.  And that statute

12  starts with what's called a Parsimony Clause that says that

13  whatever sentence the Court imposes should not be greater than

14  necessary to achieve those goals of sentencing.  Some of them

15  apply, some of them don't apply.  Applicable here are the

16  nature and circumstances of your offense.  A lot has been

17  discussed about that.  Your history and characteristics and

18  there is a lot about that in the submissions from your

19  attorney as well as here today.

20       The sentence should reflect the seriousness of the

21  offense, promote respect for the law and provide just

22  punishment for the offense and also afford adequate deterrents

23  to criminal conduct in society as a whole and specifically

24  protect the public from any further crimes that you might

25  commit.

1     It should provide the defendant before the Court

2 with any needed educational or vocational training, medical

3 care or other correctional treatment in the most effective

4 manner.  Restitution is mandatory in this case.  I believe

5 losses were only sustained by the victim in Count One, and

6 that is mandatory in a case such as this.

7     I'm not going to say anything more about the

8 guidelines.  What I will say is that on the one hand you have

9 had a very difficult life, difficult childhood.  You've had a

10 life that has been marked by long-term use of drugs and also

11 perhaps some mental health issues as well that perhaps that

12 have not really been adequately addressed.  You have spent a

13 substantial part of your life in and out of jail beginning

14 with age 17.

15     With respect to Criminal History Category VI, a

16 person falls in that category if they have at least 13

17 criminal history points or more, and in your case you have 22

18 and that doesn't include eight prior convictions for which no

19 points were assessed, and the Court has to take that into

20 account.  Your criminal history starts at the age of 17 with a

21 robbery 3 where you stole someone's earrings, you said you had

22 a gun.

23     And also the fact that while you've been in custody

24 in the state court system you've had a lot of disciplinary

25 action taken against you for a variety of issues including

1  creating disturbances, disobeying direct orders, fighting.

2  You've been arrested for assault while on parole.  In fact,

3  you've rarely had any parole time where you weren't violated

4  one way or another.  And you do have a history of convictions

5  for violence towards individuals.  It seems like mostly women,

6  perhaps the same person, not clear to me from the writeup, but

7  causing injury, violating orders of protection.  You've had

8  bench warrants during the life of some of these cases.  You

9  violated probation.  You've had convictions for contempt of

10  court for violating protection orders.

11          You've had, as we discussed, a number of robbery

12  offenses.  You've had some minor offenses for fare beating,

13  drug possession, simple drug possession.  In 2002, you had

14  another assault three conviction and also you've made threats

15  to the victim in the past.  After that you had another robbery

16  conviction that was a chain snatch, there was injury to the

17  complainant in that case.  And you had disciplinary actions

18  against you in the state corrections system including

19  possession of contraband, threats, providing false

20  information.  Again, you violated the orders of protection,

21  you absconded from parole.  You had yet another criminal

22  contempt conviction for violating a Court order, order of

23  protection.  You threatened the victim in writing and telling

24  her that you'd get a gun and kill her.

25          In another attempt robbery conviction in 2009 you

```
 1   threatened the use of a gun and removed property that was a

 2   bank robbery.  You seem to like Popular Community Bank which

 3   was the victim I think twice in this case.  And that's the

 4   first time that you threatened the use of a firearm in passing

 5   a note in a bank robbery.

 6            In another case in a robbery 2 conviction you

 7   displayed a knife and actually hit the complainant in that

 8   case and caused injury.

 9            So you have had a number of bank robberies,

10   robberies from individuals, it's -- while, thankfully, there

11   was no violence in this case, you have a history that does

12   seem to indicate that if need be you will resort to violence

13   and the Court has to consider that in terms of protecting the

14   public.  You are a serial robber, whether it's influenced by

15   your drug addiction.  You've got really no employment history

16   to speak of.  You've got no stable home to speak of either.

17   But the Court has serious concerns about the fact that you

18   might recidivate and put the public at risk.

19            By the same token, I do think that the guideline

20   range under the Career Offender Guideline as applied is too

21   onerous a guideline.  And I also think that even applying a

22   total offense level of 22, in other words, not using the

23   career offender finding is not adequate either.

24            With respect to the plea of guilty penalty, as it

25   has been called by your attorney, you allocuted under oath
```

1  that nobody forced you to plead guilty.  You understood that

2  the plea of guilty to the indictment was to preserve your

3  ability to appeal in this case, and so that was a conscious

4  decision that you made.  And so I can't -- I'm reluctant to

5  apply a so-called penalty here analysis.

6         The Court finds that a sentence of 120 months is

7  appropriate under all of the circumstances, that's on each of

8  the three counts to run concurrent with a three-year term of

9  supervised release on each count also to run concurrent with

10  each other.  I would note that probation's recommendation on

11  each count was 188 months, which was the high end of the

12  Career Offender Guideline.

13         Restitution is ordered in the amount of $300 under

14  Count One.  And that's payable at the rate of $25 per quarter

15  and 10 percent of your gross income while you're on supervised

16  release.

17         The following special conditions of supervision

18  apply:  You may not possess any firearm, ammunition or

19  destructive device.  You must comply with the restitution

20  order.  I know the indictment charged forfeiture, but I don't

21  think the government is seeking forfeiture.  Correct?

22         MR. GILMAN:  That's correct, Your Honor, we will not

23  seek forfeiture because the amount is -- because of the amount

24  under $300 and we'll leave it to restitution for that amount

25  to be reclaimed.

```
 1              THE COURT:  You must comply with the restitution

 2     order of the Court and that means that you must make full

 3     financial disclosure to probation in order to determine your

 4     ability to pay.  Upon request, you must provide to probation

 5     all your financial records including any commingling income,

 6     expenses, assets and liabilities including any income tax

 7     returns with the exception of the financial reports, accounts

 8     that you report, I don't think you had any, and noted in the

 9     presentence report you're prohibited from maintaining and/or

10     opening any additional individual and/or joint checking,

11     savings or other financial accounts for either personal or

12     business purposes without the knowledge and approval of the

13     Probation Department.  You must cooperate with the probation

14     officer in the investigation of any of your financial dealings

15     and provide truthful monthly statements of your income and

16     expenses.  You must cooperate in signing of any authorization

17     to release information forms permitting probation to access

18     your financial information and records.

19              You must participate in an out-patient drug

20     treatment program, if appropriate at that time.  So, first,

21     there has to be an evaluation and, if appropriate, an

22     out-patient treatment program.  You'll have to contribute

23     to -- that's a program that's approved by the Probation

24     Department.  You must contribute to the cost of that treatment

25     not to exceed an amount determine reasonable by the Probation
```

1  Department's sliding scale for substance abuse treatment

2  service and cooperate in securing any applicable third-party

3  payment, that's like insurance or Medicaid.  You must disclose

4  all financial information and documents to probation so they

5  can determine your ability to pay.

6          You must not consume any alcohol or any kind of drug

7  or synthetic drugs, nothing, before, during and after

8  treatment unless you're given a prescription by a doctor, a

9  licensed doctor or a psychiatrist and you have to provide

10  proof of that prescription to probation.

11          You must submit to random drug testing during and

12  after treatment to ensure abstinence from drugs and alcohol.

13  Probation had recommended a curfew, but the defendant is

14  essentially homeless, so for the first six months the

15  defendant shall reside in a residential reentry center or a

16  halfway house, or until a suitable home is obtained that's

17  approved by probation.

18          What that means is the first six months you're going

19  to have to be in a halfway house unless you're able to find

20  suitable housing that probation approves of.  If you do that

21  let's say within the first two months of being at the halfway

22  house, you can move out of the halfway house into the home as

23  long as probation approves of it.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

```
 1          MR. KIRCHHEIMER:  Judge, might I suggest since
 2    you're basically that condition adds approximately six months
 3    to the sentence, that to take account for that six month
 4    halfway house, obviously it's eminently rational that you
 5    reduce the prison sentence from 120 months to 114 months on
 6    the assumption that he's going to have an extra six months on
 7    the beginning, on the front end of the supervised release, so
 8    make it 114 months plus six months RRC while on supervised
 9    release.
10          THE COURT:  No, that application is denied.
11          You must maintain lawful verifiable employment
12    and/or participate in some sort of educational program
13    including getting your GED, or vocational program.
14          There is a 300-dollar special assessment.  Let me be
15    clear, the GED is a separate condition because for a lot of
16    vocational programs you need have a GED first.  A lot of
17    training programs you need to have that first.  I'm hopeful
18    that you're going to make productive use of your time while in
19    custody and get your GED while you're inside so that you can
20    have a leg up when you come out.  Okay?
21          So that's $100 per count.  No fine is imposed due to
22    the priority of restitution as well as inability to pay.
23          There are no outstanding counts open or indictments,
24    underlying indictments, correct?
25          MR. KIRCHHEIMER:  Correct.
```

1          MR. GILMAN:  That's correct, Your Honor.

2          THE COURT:  Any recommendation to the Bureau of

3   Prisons?  I was going to recommend that he be provided the

4   opportunity to participate in RDAP.

5          MR. KIRCHHEIMER:  Yes, Judge, I was going to ask you

6   that.

7          THE COURT:  I'm also going to recommend that he be

8   provided with mental health treatment.

9          Would you be amenable to that, Mr. Love?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  I'm going to ask for that as well.

12          What about location of the facility?

13          MR. KIRCHHEIMER:  Judge, I'd ask you recommend a

14   facility as near New York State as possible, near New York

15   City, so that would be -- but I don't want --

16          THE COURT:  Fort Dix or something like that?

17          MR. KIRCHHEIMER:  Fort Dix or Danbury.  I don't want

18   to specify a particular one because I don't know about

19   security classification.

20          THE COURT:  Yes, I would not specify one in any

21   event.  And understand, Mr. Love, that where you are housed

22   depends on a lot of different factors not the least of which

23   is something as simple as availability of space.  And like

24   what Mr. Kirchheimer specified, whatever security level you

25   get designated that's entirely up to the Bureau of Prisons.

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

```
 1              You are advised that you have a right to appeal from

 2    the sentence and judgment of the Court.  You may be entitled

 3    to be represented by counsel on appeal.  If you cannot afford

 4    counsel you may ask for the Court to provide counsel for you,

 5    or if you cannot afford the cost and the fees for the appeal

 6    you may ask for leave to proceed by way of poor person relief.

 7    And I would ask that Federal Defenders to stay on for that

 8    requisite 14-day period --

 9              MR. KIRCHHEIMER:  Yes, yes, Judge, I will do so.

10              THE COURT:  -- to file a notice on his behalf --

11              MR. KIRCHHEIMER:  I will do so.

12              THE COURT:  -- if that's what he wishes.

13              Is there anything else I may have missed?

14              MR. GILMAN:  Nothing further from the government,

15    Your Honor.  Thank you.

16              MR. KIRCHHEIMER:  No, Judge.

17              THE COURT:  One question, I know Mr. Love I think

18    may have mentioned to probation that he was interested in

19    going to Alabama, living in Alabama; is that right?

20              THE DEFENDANT:  Yeah, I don't know what my sister's

21    gonna do though.

22              THE COURT:  Just so that you know, in the event that

23    a suitable home can be found for you in Alabama, that may not

24    be a problem.  That's a request you make through probation and

25    then the supervision can be coordinated with Alabama.  I would
```

1   retain jurisdiction in the event that you violated your

2   supervised release you would come back here, okay, and I would

3   then handle that.  Okay?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Just so that you know looking forward

6   that that is still an option that may be available to you, but

7   it's got to be suitable housing, okay?

8           THE DEFENDANT:  Thanks.

9           THE COURT:  A suitable arrangement.

10          Thank you.

11          MR. GILMAN:  Thank you, Your Honor.

12          (Matter concluded.)

13                  *     *     *     *     *

14

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

16

17   s/ Georgette K. Betts              May 12, 2017

18   GEORGETTE K. BETTS                 DATE

19

20

21

22

23

24

25