UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

SHAMEKE WALKER,

                    Defendant.

**MEMORANDUM &
STATEMENT OF REASONS**
15-CR-388

J ACK  B. W EINSTEIN, **Senior United States District Judge:**

**Parties**

The United States of America

**Appearances**

Andrey Spektor
Lindsay Gerdes
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201

Shameke Walker

Michael Hueston
16 Court Street, Suite 3301
Brooklyn, NY 11241

Table of Contents

I.    Introduction .................................................................................................................... 3
  A.   The Crime ................................................................................................................. 3
  B.   Rule 29 Motion .......................................................................................................... 3
  C.   Statutory and Guidelines Sentencing Enhancements ................................................ 4
  D.   Sentence ..................................................................................................................... 5
II.   Facts .............................................................................................................................. 5
  A.   Event ......................................................................................................................... 5
  B.   Walker's Criminal History ........................................................................................ 6
III.  Law ............................................................................................................................... 6
  A.   Motion for a Judgment of Acquittal ......................................................................... 6
    i.    Hobbs Act Robbery, 18 U.S.C. § 1951 ................................................................ 7
    ii.   Multiplicity ........................................................................................................... 7
    iii.  Hobbs Act and Double Jeopardy .......................................................................... 9
  B.   Sentencing Enhancements Under Federal Law and the Guidelines ......................... 11
    i.    Armed Career Criminal Act, 18 U.S.C. § 924(e) ............................................... 11
    ii.   Career Offender Guidelines, U.S.S.G. § 4B1.1 ................................................. 13
    iii.  Categorical Approach .......................................................................................... 14
    iv.   Modified Categorical Approach .......................................................................... 14
IV.   Application of Law to Facts ........................................................................................ 16
  A.   Multiplicity .............................................................................................................. 16
  B.   Armed Career Criminal Act; New York Second Degree Robbery .......................... 17
  C.   Career Offender Guidelines ..................................................................................... 20
    i.    Hobbs Act Robbery ............................................................................................. 20
    ii.   Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence, 18 U.S.C. § 924(c) ........................................................................................................ 22
    iii.  Felon in Possession of Ammunition, 18 U.S.C. § 922(g)(1) .............................. 23
V.    18 U.S.C. § 3553(a) Considerations and Guidelines Calculation .............................. 23
  A.   Walker's Background ............................................................................................... 23
  B.   Statutory Sentencing Range and Guidelines Calculation ........................................ 24
    i.    Offense Level Calculation ................................................................................... 25
    ii.   Criminal History Calculation .............................................................................. 26
    iii.  Total Calculation ................................................................................................. 26
VI.   Conclusion .................................................................................................................. 27

I.   Introduction

   A.  The Crime

During the robbery of a bodega in Brooklyn, New York, Shameke Walker ("Walker")
fired at a store clerk with a revolver.  The bullet missed the clerk, but pierced the leg of an
uninvolved security guard standing across the street.

Walker was arrested and charged with four counts: (1) Hobbs Act Robbery, 18 U.S.C. §
1951(a); (2) committing physical violence in furtherance of a Hobbs Act Robbery, 18 U.S.C. §
1951(a); (3) possessing, brandishing, and discharging a firearm during a crime of violence, 18
U.S.C. § 924(c); and (4) being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1).

Under federal law, Walker could not be charged with attempted murder or assault, as he
could have been under New York State law, for the shooting of the security guard.  *Taylor v.
United States*, 136 S. Ct. 2074, 2082–83 (2016) (Thomas, J., dissenting) ("The Constitution
expressly delegates to Congress authority over only four specific crimes . . . Given these limited
grants of federal power, it is 'clea[r] that Congress cannot punish felonies generally.'") (quoting
*Cohens v. Virginia,* 6 Wheat. 264, 428 (1821) (Marshall, C. J.)).  The Government attempted to
avoid this issue by charging Walker twice under the Hobbs Act—once for robbery and once for
violence in furtherance of the robbery.

   B.  Rule 29 Motion

In mid-trial motions, Walker argued that Count One, Hobbs Act Robbery, and Count Two,
violence in furtherance of Hobbs Act Robbery, were multiplicitous, violating his Fifth
Amendment protection against double jeopardy.  Trial Tr. 533:3-9, Jul. 14, 2018 ("Count One and
Count 2 both charge Hobbs Act Robbery, 18 U.S.C. 1951. It is not that there are two subsections,
it is not Part A and Part B or Clause 1 and Clause 2 . . . both of those charges charge the exact

same statute. When we look at the facts in the case and the language of the statute, they do so in exactly the same way.").  The court reserved decision on the motion, letting all four counts go to the jury.  Walker was found guilty as charged.  *See* ECF No. 115, Jul. 15, 2016; ECF No. 118, Jul. 18, 2016.

Because the elements of proof required for Hobbs Act Robbery are sufficient to prove violence in furtherance of Hobbs Act Robbery, Count Two is dismissed as multiplicitous.  *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) ("An indictment is multiplicitous if it charges the same crime in two counts.").

### C.  Statutory and Guidelines Sentencing Enhancements

Walker argues that his prior and current offenses do not designate him as an Armed Career Criminal, 18 U.S.C. § 924(e), nor do they qualify for a sentence enhancement under the Career Offender Guidelines, U.S.S.G. § 4B1.1.

Walker has a long history of violent and criminal acts.  Under the sentencing Guidelines and federal law, however, he is not subject to a sentence enhancement as a violent predicate offender.

Mandatory minimum statutes constitute the basis for a major category of excessive federal sentences.  Whenever it is reasonable to do so based on the language of the applicable statute, we should construe it against mandatory minimum sentences.  *United States v. Dossie*, 851 F. Supp. 2d 478, 478 (E.D.N.Y. 2012) ("[Mandatory Minimums] strip criminal defendants of the due process rights we consider fundamental to our justice system.").

The rule of lenity is particularly useful in moderating excessive mandatory minimum sentences.  *See Rewis v. United States*, 401 U.S. 808, 812 (1971) ("Ambiguity concerning the

ambit of criminal statutes should be resolved in favor of lenity.").  Neither the Armed Career

Criminal Act nor the Career Offender Guidelines are applicable to Walker.

       D.  Sentence

Walker is sentenced to 10 years on Count Three, brandishing a firearm during a crime of

violence, 18 U.S.C. § 924(c), to run consecutive to a sentence of time served on Count One,

Hobbs Act Robbery, 18 U.S.C. § 1951(a), and Count Four, felon in possession of ammunition, 18

U.S.C. § 922(g)(1).

Walker has been in custody since July 15, 2015.  Presentence Report ("PSR") at 1.  The

sentence of time served on Counts One and Four amounts to approximately 34 months'

incarceration.  Walker's combined term of imprisonment will be almost 13 years.  He is sentenced

to five years' supervised release.

II.    Facts

       A.  Event

In the early morning of June 13, 2015, Walker entered a convenience store; he was

armed with a handgun.  Trial Tr. 11:24-12:4, Jul. 11, 2016.  Drawing his gun, he demanded cash

from the store clerk, Barry Almontaser.  *Id.* at 172:12-14, Jul. 12, 2016.  Walker stole two

telephones, two cartons of cigarettes, and $700 from the register.  *Id.* at 172:15-20.  While

Walker was pocketing the stolen items, the store clerk, in an attempt to stop him from leaving,

cut a rope used to hold the front glass door open.  *Id.* at 174:7-25.

As the store clerk was shutting the door from the outside, Walker shot once at him

through the glass.  *Id.* at 175:16-17.

The bullet shattered the glass door, narrowly missed the store clerk, and traveled across

the street hitting a security guard in the leg.  Evidence that the bullet hit a security guard was

excluded at trial as unduly prejudicial. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997); Hr'g Tr. at 33:25-34:20, Jun. 22, 2016 ("You are going to have [evidence that] the bullet went through the window after the gun was shot, and from the direction it went across the street. But I am not going to allow in evidence that a civilian was shot. That prejudices the case entirely.").

The store clerk ran from the scene; Walker nonchalantly pedaled away on his bike with the stolen goods. *Id.* at 176:22-25.

### B. Walker's Criminal History

The government argues that three of Walker's prior convictions are relevant in considering sentence enhancements under the Armed Career Criminal Act and Career Offender Guidelines. *See* Gov't Sentencing Mem., ECF No. 138.

1. In 1991, Robbery in the Second Degree (Aided by Another), New York Penal Law § 160.10(1). Walker was sentenced to 54 months' incarceration. PSR at ¶ 37.

2. In 1999, Strong Arm Robbery, South Carolina Penal Law § 16-11-330(A). Walker was sentenced to 10 years' incarceration. PSR at ¶ 42.

3. In 2010, Aiding and Abetting Assault with a Dangerous Weapon with Intent to do Bodily Harm, 18 U.S.C. § 113(a)(3). This crime took place while Walker was incarcerated at a federal penitentiary. PSR at ¶ 45. He was sentenced to 18 months in prison. *Id.*

## III. Law

### A. Motion for a Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, a defendant may move for a judgment of acquittal on the theory that the Government's evidence is insufficient to sustain a conviction. Where the motion is made before the close of all the evidence, "the court may reserve decision on the motion, proceed with the trial . . . submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty . . . If the court

reserves decision, it must decide the motion on the basis of the evidence at the time the ruling

was reserved." Fed. R. Crim. P. 29(b).

      i.   Hobbs Act Robbery, 18 U.S.C. § 1951

18 U.S.C. § 1951(a) provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the
> movement of any article or commodity in commerce, by robbery or extortion or
> attempts or conspires so to do, or commits or threatens physical violence to any
> person or property in furtherance of a plan or purpose to do anything in violation
> of this section shall be fined under this title or imprisoned not more than twenty
> years, or both.

Under this section, "robbery" is defined as:

> the unlawful taking or obtaining of personal property from the person or in the
> presence of another, against his will, by means of actual or threatened force, or
> violence, or fear of injury, immediate or future, to his person or property, or
> property in his custody or possession, or the person or property of a relative or
> member of his family or of anyone in his company at the time of the taking or
> obtaining.

18 U.S.C.§ 1951(b)(1).

      ii.   Multiplicity

The Fifth Amendment to the United States Constitution provides that no person shall

"twice be put in jeopardy of life or limb" for the same offense. An indictment which charges

two offenses instead of one for what is the same criminal act, is multiplicitous, and violates the

double jeopardy clause. *United States v. Harris*, 79 F.3d 223, 231 (2d Cir. 1996). "The primary

problem is that the jury can convict on both counts, resulting in two punishments for the same

crime." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004).

The Supreme Court in *BlockBurger v. United States*, 284 U.S. 299, 304 (1932), laid out

the test to determine whether an indictment charges distinct crimes.

> A single act may be an offense against two statutes; and if each statute requires
> proof of an additional fact which the other does not, an acquittal or conviction

under either statute does not exempt the defendant from prosecution and punishment under the other.

*Id.* (internal quotation omitted).

*BlockBurger* and its progeny instruct courts to consider whether "each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010) ("We explained that the critical double jeopardy inquiry is not factual, *i.e.,* whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.,* 'whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another.'") (quoting *United States v. Chacko*, 169 F.3d 140, 147 (2d Cir. 1999)).  When a single statutory violation is "charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *Ansaldi* 372 F.3d at 124.

Multiple counts based on identical facts, but different elements of law, will not violate the double jeopardy clause. *Gavieres v. United States*, 220 U.S. 338, 342 (1911) ("It is true that the acts and words of the accused set forth in both charges are the same; but in the second case it was charged, as was essential to conviction, that the misbehavior in deed and words was addressed to a public official. In this view we are of opinion that while the transaction charged is the same in each case, the offenses are different.").  Proof of additional facts, however, is insufficient on its own to overcome double jeopardy. *Ansaldi* 372 F.3d at 124 ("In this case, it is true that each count undoubtedly required proof of something that the other did not; that is, the counts are not identical. The theory of Count Three required the government to prove that GBL converted to GHB in the body and that Defendants were aware of that. Count Four

required proof that Defendants intended to distribute GBL for human consumption, as well as that GBL met the requirements for being a controlled substance analogue. Nevertheless, none of the facts peculiar to each count is relevant to the 'unit' of prosecution of the count.").

      iii.   Hobbs Act and Double Jeopardy

In *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9 (2006), the Supreme Court addressed whether physical violence unrelated to robbery or extortion fell within the scope of the Hobbs Act. The Court examined the text of the statute and determined that *robbery or extortion* was required for a violation of the Hobbs Act.

> Congress did not intend to create a freestanding physical violence offense in the Hobbs Act. *It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in what the statute refers to as robbery or extortion* (and related attempts or conspiracies).

*Scheidler*, 547 U.S. at 23 (emphasis added).

In dicta, the Court discussed other possible factual scenarios that could be covered under the "violence . . . in furtherance" clause, such as:

> a hypothetical mobster who threatens violence and demands payment from a business. Those threats constitute attempted extortion; but the subsequent acts of violence against a noncomplying business by the subordinates of that mobster may not constitute attempted extortion and may not be punishable as a conspiracy to commit extortion if the subordinates were not privy to the mobster's plan. A specific prohibition of physical violence in furtherance of a plan to commit extortion would bring the subordinates' behavior within the statute's coverage.

The United States Government argued that the physical violence clause also:

> permits prosecutors to bring multiple charges for the same conduct. For instance, the clause would apply to a defendant who injured bystanders during a robbery, permitting the Government to charge that defendant with the Hobbs Act crime of robbery and the separate Hobbs Act crime of using violence in furtherance of the robbery.

*Id.* at 22 (internal citation omitted).

The Model Federal Jury Instructions have rejected the latter interpretation offered by the

Government, but endorsed the former application where a defendant committed an act that was in furtherance of, but did not quite rise to the level of extortion or robbery.

The comment to the Hobbs Act jury instructions explains this reasoning:

> The Hobbs Act, 18 U.S.C. § 1951, seems on its face to describe three separate offenses: (1) robbery; (2) extortion; and (3) committing or threatening physical violence in furtherance of a plan or purpose to violate section 1951. However, in *National Organization for Women, Inc. v. Scheidler* (*Scheidler III*), the Supreme Court held that the third putative offense does not "create a freestanding physical violence offense," but rather must be read restrictively to proscribe only the commission or threat of violence in furtherance of a plan to commit robbery or extortion. *Thus, it seems that* [the violence in furtherance clause is] *only applicable when the defendant planned to commit robbery or extortion, but instead committed or threatened some act of violence not amounting to an attempted robbery or extortion, a small subset of cases that will rarely be charged.*

3-50 Sand's Modern Federal Jury Instructions-Criminal P 50.01 (2017) (emphasis added).

This interpretation is consistent with an examination of the elements of the Hobbs Act. The Hobbs Act is a divisible statute. A defendant may be convicted of Hobbs Act Robbery or Hobbs Act extortion.

Hobbs Act Robbery is indivisible; it may be committed through multiple alternative means, robbery or violence in furtherance of a plan to commit robbery, but always as part of a single element. Thus, violence in furtherance of Hobbs Act Robbery necessarily requires proof of the same elements as Hobbs Act Robbery.

The interpretation proffered by the Government, allowing a charge of Hobbs Act Robbery and violence in furtherance of Hobbs Act Robbery, for the same conduct, would violate double jeopardy by punishing the offender twice for what was designed by Congress to be a single unit of prosecution.

Our federal system requires that courts act with great care when determining the breadth of federal criminal law constitutionally delegated to the states.

It is the sensitive duty of federal courts to review carefully the enforcement of our federal criminal statutes to prevent their injection into unintended areas of state governance. . . Exercising that duty, we find it necessary to nullify this attempted application of the Hobbs Act to circumstances it was never meant to reach. Incremental extensions of federal criminal jurisdiction arguably present a more pernicious hazard for our federal system than would a bold accretion to the body of federal crimes. At a minimum, a clear extension of federal responsibility is likely to be sufficiently visible to provoke inquiries and debate about the propriety and desirability of changing the state-federal balance. Less abrupt, more subtle expansions, however, such as nearly occurred here, are less likely to trigger public debate, and, yet, over time cumulatively may amount to substantial intrusions by federal officials into areas properly left to state enforcement.

*United States v. Capo*, 817 F.2d 947, 955 (2d Cir. 1987).

 B.   Sentencing Enhancements Under Federal Law and the Guidelines

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the Career Offender Guidelines, U.S.S.G. § 4B1.1(a), separately delineate sentencing enhancements based on a defendant's history of violent criminal acts.

 i.   Armed Career Criminal Act, 18 U.S.C. § 924(e)

The ACCA imposes a mandatory 15 year prison term on any defendant convicted of 18 U.S.C. § 922(g), felon in possession of ammunition or a firearm, who has three prior convictions for a violent felony or a serious drug offense, committed on three different occasions.  18 U.S.C. § 924(e)(1).  A 10 year maximum penalty applies without the ACCA sentence enhancement.  *See* 18 U.S.C. § 924(a)(2).

The statute defines "violent felony" in section 924(e)(2)(B):

the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 (ii) is burglary, arson, or extortion, [or] involves use of explosives . . .

Subsection (i) is described as the "force clause" and subsection (ii) is referred to as the "enumerated clause." The statute previously contained a "residual clause" which included "conduct that presents a serious potential risk of physical injury to another" within the definition of a "violent felony." The Supreme Court, in 2015, ruled the "residual clause" unconstitutionally vague, and no longer a basis for an increased sentence under the ACCA. *Johnson v. U.S.*, 135 S. Ct. 2551, 2563 (2015) ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.").

1. The Force Clause of the ACCA

The ACCA does not provide a definition for "physical force," therefore we "give the phrase its ordinary meaning." *Johnson v. United States*, 559 U.S. 133, 138 (2010) (citing *Bailey v. United States,* 516 U.S. 137, 138 (1995)).

The Supreme Court, in examining the meaning of the force clause, reminds us to interpret it in the larger context of determining what amounts to a violent felony. *Johnson,* 559 U.S. at 141 ("We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person.") (emphasis in original). The Court rejected the Government's argument that this clause is satisfied by "mere-touching" or a "non-violent misdemeanor," and held that the statute requires "violent force," or "force capable of causing physical pain or injury to another person." *Id.* at 140-43 ("It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example."); *see also United States v. Castleman*, 134 S. Ct. 1405, 1412 (2014) ("Minor uses of force may not constitute 'violence' in the generic sense.").

ii.   Career Offender Guidelines, U.S.S.G. § 4B1.1

Under the United States Sentencing Commission Guidelines, a defendant is sentenced as a

Career Offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Section 4B1.2 of the Guidelines defines a "crime of violence" as:

> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

>> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C.§ 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

Like all Guidelines, the Career Offender section is advisory, not mandatory:

> there is no statutory provision instructing courts to sentence a career offender at or near the statutory maximum.  And while the sentencing statute expressly directs the district court to 'consider' the 'sentencing range established for . . . the applicable category of defendant as set forth in the guidelines,' 18 U.S.C. § 3553(a)(4)(A), it does not instruct the court to impose such a sentence.

*United States v. Sanchez*, 517 F.3d 651, 663 (2d Cir. 2008) (quoting *United States v. LaBonte*,

520 U.S. 751, 761 n.5 (1997)).

### iii. Categorical Approach

In *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004), the Supreme Court instructed district courts deciding whether an offense is a crime of violence to apply the "categorical approach" and "look to the elements and nature of the offense of conviction, rather than to the particular facts relating to the petitioner's crime."

Under this approach, the court considers the "offense generically, that is to say, [it] examine[s] it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012). If the elements are identical to an enumerated offense, then the prior conviction qualifies as a predicate offense; however, if the "statute criminalizes any conduct that would not fall within the scope of either the force clause or the residual clause, a conviction under the . . . statute is not categorically a crime of violence and cannot serve as a predicate offense." *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017) (internal citations omitted); *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) ("A crime counts as 'burglary' under the [ACCA] if its *elements* are the same as, or narrower than, those of the generic offense. But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.,* the facts of the crime) fits within the generic offense's boundaries.") (emphasis in original).

### iv. Modified Categorical Approach

In a narrow set of cases courts apply the "modified categorical approach," where they look beyond the statutory elements to "a limited class of documents (for example, the indictment, jury instructions, plea agreement) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. In such cases, the statute underlying the prior

conviction contains multiple alternative elements—creating a "divisible" statute—which prohibits

a later sentencing court from discerning, without reviewing something more, which elements

underlie the defendant's conviction. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)

(a statute is typically, but not always, divisible if it "sets out one or more elements of the offense

in the alternative—for example, stating that burglary involves entry into a building *or* an

automobile") (emphasis in original).

The Supreme Court recently discussed the differences between statutory *elements* and

*means* required to commit a crime:

> This case concerns a different kind of alternatively phrased law: not one that lists
> multiple elements disjunctively, but instead one that enumerates various factual
> means of committing a single element. *See generally Schad v. Arizona,* 501 U.S.
> 624, 636, 111 S. Ct. 2491 (1991) (plurality opinion) ("[L]egislatures frequently
> enumerate alternative means of committing a crime without intending to define
> separate elements or separate crimes").

*Mathis*, 136 S. Ct. at 2249.

As an example, the court described a statute which:

> requires use of a "deadly weapon" as an element of a crime and further provides
> that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because
> that kind of list merely specifies diverse means of satisfying a single element of a
> single crime—or otherwise said, spells out various factual ways of committing
> some component of the offense—a jury need not find (or a defendant admit) any
> particular item: A jury could convict even if some jurors "conclude[d] that the
> defendant used a knife" while others "conclude[d] he used a gun," so long as all
> agreed that the defendant used a "deadly weapon." And similarly, to bring the
> discussion back to burglary, a statute might . . . itemize the various places that
> crime could occur as disjunctive factual scenarios rather than separate elements, so
> that a jury need not make any specific findings (or a defendant admissions) on that
> score.

*Id.* (internal citations omitted).

Thus, the threshold inquiry is whether the statute underlying the prior conviction lists

*elements* of the crime, or alternative *means* of committing the crime. If they are *elements*, and

create separate criminal acts, the court may apply the modified categorical approach at sentencing to "discover which of the enumerated alternative [elements] played a part in the defendant's prior conviction." *Id.* at 2256. If they are *means*, to a singular criminal act, "the court has no call to decide which of the statutory alternative [means] was at issue in the earlier prosecution." *Id.*

IV.    Application of Law to Facts

A.  Multiplicity

Walker argues that "submitting separate counts to the jury for [Hobbs Act] robbery and violence-in-furtherance [of Hobbs Act Robbery]" violates the double jeopardy clause of the Fifth Amendment. Defendant's Letter, ECF No. 139, Jan. 12, 2018.

The court, in its jury instructions, provided the definitions of "Hobbs Act Robbery" and "Robbery" as written under 18 U.S.C. § 1951(a). The court also spelled out the three elements necessary to prove Count One, Hobbs Act Robbery:

> First, that Mr. Walker knowingly obtained or took the personal property of another, the owner of the store, and that includes money and other tangible and intangible things of value capable of being possessed and transferred from one person to another . . .

> Second, Mr. Walker took this property against the other person's will, by actual or threatened force, or violence, or fear of injury . . . A threat may be made verbally or by a physical gesture, depending upon the particular facts.

> Third, that the robbery in some way affected interstate or foreign commerce or the movement of goods in commerce . . .

Trial Tr. 716:14-717:1, Jul. 15, 2016.

The court next charged the jury with Count Two, commission of violence in furtherance of Hobbs Act Robbery. *Id.* at 718-719. The court again read the definition of a Hobbs Act Robbery, then listed the following elements necessary to prove Count Two:

First, that Mr. Walker threatened or committed physical violence against [the owner of the store]. Physical violence requires the use of force, which is force capable of causing physical pain or injury to another person.

Second, that the defendant committed or threatened acts of violence in furtherance of a robbery. I have already told you what "robbery" means.

Third, that as a result of Mr. Walker's actions, interstate commerce, or an item moving in interstate commerce, would be delayed, obstructed, or affected in some way . . .

*Id.* at 718:14-24.

Charging both counts violated double jeopardy. Hobbs Act Robbery is indivisible. A defendant may be convicted under the statute for robbery or violence in furtherance of robbery, but not both. These are different *means* not separate *elements.* Congress did not intend for a single criminal act to give rise to separate units of prosecution. *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004).

The sole addition in Count Two, as charged to the jury, is the *in furtherance of a robbery* clause. The act of taking property through physical force in Count One encapsulates the use of force in furtherance of a robbery in Count Two. "Because the violence in furtherance clause would not require proof of any elements beyond those in the robbery charge, allowing the jury to separately convict on both would violate the Double Jeopardy Clause . . ." Defendant's Mot., ECF No. 139, Jan. 12, 2018, at 16-17.

The hypothetical uses of the Hobbs Act proposed by the parties in *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9 (2006), are inapplicable as charged to the jury here. *See Supra* 3-50 Sand's Modern Federal Jury Instructions-Criminal P 50.01 (2017).

B. Armed Career Criminal Act; New York Second Degree Robbery

Walker was convicted of 18 U.S.C. § 922(g), felon in possession of ammunition. Under the ACCA, the court determines whether Walker, in addition to his instant conviction of 18

U.S.C. § 922(g), has committed three prior violent felony offenses and is thus subject to a 15 year mandatory minimum.  18 U.S.C. § 924(e)(1).

The Government argues Walker has three prior violent felony convictions: (1) Robbery in the Second Degree, New York Penal Law 160.10(1); (2) Strong Arm Robbery, South Carolina Penal Law § 16-11-330(A); and (3) Aiding and Abetting Assault with a Dangerous Weapon with Intent to do Bodily Harm, 18 U.S.C. § 113(a)(3).

As described below, New York Robbery in the Second Degree is not a violent felony under the ACCA.  Therefore, Walker cannot have committed three prior violent felony offenses, and it is unnecessary to review his other possible predicate convictions.

Robbery is not an enumerated offense in the ACCA, so the court must determine under the "force" clause whether or not it is a violent felony.  Although the ACCA does not define "physical force" as used in the statute, the Supreme Court has held that "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States,* 559 U.S. 133, 140 (2010) (emphasis in original).

New York Penal Law Section 160 defines robbery as forcible stealing and states:

A person forcibly steals property when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

NYPL 160.00.

Because second degree robbery is a divisible statute the court must next use the modified categorical approach and examine which of the three types of second-degree robbery Walker was convicted of. *Buie v. United States*, 2017 WL 3995597, at *5 (S.D.N.Y. Sept. 8, 2017).

Walker pled guilty to NYPL 160.10(1). Under this subsection, a person is guilty of robbery in the second degree, when he forcibly steals property and when "[h]e is aided by another person actually present . . ." Being aided by another in commission of a robbery does not turn an otherwise non-violent felony into a violent felony under the ACCA.

In *Johnson*, the Supreme Court held that sentencing courts are bound by a state court's interpretation of the elements of a state-law offense. *Johnson*, 559 U.S. at 138. Reviewing New York courts' interpretations of the elements of NYPL 160.10, this court finds that Walker's conviction cannot qualify as a predicate offense under the ACCA, since second-degree robbery, even when aided by another, may be accomplished without violent force.

> New York courts have explained that the "physical force" threatened or employed can be minimal, including a bump, a brief tug-of-war over property, or even the minimal threatened force exerted in "blocking" someone from pursuit by simply standing in their way. *See, e.g., People v. Lee,* 197 A.D.2d 378, 602 N.Y.S.2d 138, 139 (1st Dep't 1993) (bumping victim); *People v. Bennett,* 219 A.D.2d 570, 631 N.Y.S.2d 834, 834 (1st Dep't 1995) ("human wall" blocking pursuit); *People v. Patton,* 184 A.D.2d 483, 585 N.Y.S.2d 431, 431 (1st Dep't 1992) (blocking pursuit); *People v. Safon,* 166 A.D.2d 892, 560 N.Y.S.2d 552, 552 (4th Dep't 1990) (tug-of-war); *People v. Brown,* 243 A.D.2d 363, 663 N.Y.S.2d 539, 540 (1st Dep't 1997) (attempting to push the victim); *People v. Pena,* 50 N.Y.2d 400, 407 n. 2, 429 N.Y.S.2d 410, 406 N.E.2d 1347 (N.Y. 1980) (defendant who commits robbery while carrying a deadly weapon is guilty of robbery in the first degree; mere possession is sufficient for a conviction); *cf. United States v. Castleman,* ⸺ U.S. ⸺, 134 S.Ct. 1405, 1412, 188 L.Ed.2d 426 (2014) ("Minor uses of force may not constitute 'violence' in the generic sense. For example, in an opinion that we cited with approval in *Johnson,* the Seventh Circuit noted that it was hard to describe ... as violence a squeeze of the arm [that] causes a bruise.").

*United States v. Moncrieffe*, 167 F. Supp. 3d 383, 403–04 (E.D.N.Y. 2016).

District courts in this circuit have affirmed this reading of the New York statute in the context of a "violent felony." *Austin v. United States*, 2017 WL 6001162, at *4 (S.D.N.Y. Dec. 4, 2017) ("Merely standing in someone's way, does not involve the use of physical force capable of causing substantial physical pain or injury. And neither pulling away when someone grabs your hand, nor hitting someone with a purse, nor a shove that only causes someone to step backward, amounts to "substantial" or "strong" physical force under *Johnson* . . . These acts are wrong, and they are illegal. But they are not violent . . . ") (internal citations omitted); *Buie v. United States*, No. 05-CR-664 (RCC), 2017 WL 3995597, at *8 (S.D.N.Y. Sept. 8, 2017) ("It is possible to commit first-degree robbery in New York without committing a violent felony as defined by ACCA.").

### C. Career Offender Guidelines

Under the Guidelines the court first determines whether an instant offense of conviction is a crime of violence. *See* U.S.S.G. § 4B1.1(a) ("[T]he instant offense of conviction is a felony that is . . . a crime of violence.").

Because none of the instant convictions, described below, are crimes of violence, the Career Offender Guidelines cannot be applied to enhance Walker's sentence.

### i. Hobbs Act Robbery

Hobbs Act Robbery envisions a single criminal act, that may be committed through different means. *See* 18 U.S.C. § 1951(b)(1). The categorical approach must be applied. *See United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017) ("We must apply the 'categorical approach' to decide whether Mr. O'Connor's prior conviction for Hobbs Act robbery is a 'crime of violence' under the Guidelines and therefore qualifies him for an enhanced sentence."); *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016) ("A crime is

not divisible simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes.").

Hobbs Act Robbery, examined categorically, is not a crime of violence under the Guidelines, because elements of the statute sweep more broadly than common law robbery and the force clause. *See, e.g., O'Connor*, 874 F.3d at 1158 ("Hobbs Act robbery can be accomplished by threats to property. Both generic robbery and Guidelines [robbery] . . . cannot—they are limited to conduct involving physical force or threats of physical *force against a person*. We thus conclude that Hobbs Act robbery under § 1951(b)(1) does not categorically qualify as a crime of violence under the enumerated offense clause of the Guidelines.") (emphasis added). Whereas the Career Offender Guidelines definition of "crime of violence" is satisfied if the offense "has an element the use, attempted use, or threatened use of physical force *against the person* of another," a Hobbs Act robbery can be completed by alternative means, specifically, "commit[ting] or threaten[ing] physical violence to any person *or* property." U.S.S.G. § 4B1.2(a)(1) (emphasis added); 18 U.S.C. § 1951(a) (emphasis added). Stated another way, "Hobbs Act robbery occurs only when one takes another's property against that person's will and by means of actual or threatened force. But it occurs regardless of whether the victim's will is overcome by force directed *to* a person *or* property." *O'Connor*, 874 F.3d at 1154 (emphasis in original) (internal quotation marks omitted).

It is irrelevant whether the instant case actually involved threats or acts of violence against a person. *Id.* at 1158 ("If some conduct that would be a crime under the [Hobbs Act] would not be a 'crime of violence' under § 4B1.2(a), then any conviction under that statute will not qualify as a 'crime of violence' for a sentence enhancement under the Guidelines, regardless of whether the conduct that led to a defendant's . . . conviction was in fact violent."); *see also*

*Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (if, as in the case of the Hobbs Act, the statute lists means to a singular criminal act, "the court has no call to decide which of the statutory alternative [means] was at issue in the earlier prosecution").

> ii. Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence, 18 U.S.C. § 924(c)

Under the Career Offender Guidelines, a "violation of 18 U.S.C. § 924(c) . . . [qualifies as] a 'crime of violence' . . . if the offense of conviction established that the underlying offense was a 'crime of violence.'" U.S.S.G. § 4B1.2 cmt. n. 1; *see generally United States v. Robinson*, 447 Fed. Appx. 512, 514-15 (4th Cir. 2011).

In the instant case, the underlying crime of violence supporting Walker's conviction under § 924(c) was a Hobbs Act Robbery. Already determined is that a Hobbs Act Robbery is not a crime of violence within the meaning of the Guidelines. Thus, for purposes of a Career Offender sentence enhancement, Walker's conviction under § 924(c) does not satisfy the requirements of a crime of violence.

*United States v. Hill*, 832 F.3d 135, 138 (2d Cir. 2016), is not relevant here, because it determined only that Hobbs Act Robbery was a crime of violence sufficient to satisfy 18 U.S.C. § 924(c)(3), possession of a firearm during a crime of violence, which includes a crime of violence against a "person or property."

The Guidelines, like the ACCA, require "physical force *against the person* of another . . ." § 4B1.2. This distinction is crucial, because Hobbs Act Robbery may involve force against only property, meaning the sweep of the statute is broader than the Guidelines. 18 U.S.C. § 1951(b)(1). Hobbs Act Robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)(3), but not under the ACCA or the Guidelines.

iii. Felon in Possession of Ammunition, 18 U.S.C. § 922(g)(1)

Three elements are required to prove 18 U.S.C. § 922(g)(1): (1) knowing possession of the firearm or ammunition; (2) a previous felony conviction; and (3) the possession being in or affecting commerce. *See United States v. Smith*, 160 F.3d 117, 121 n.2 (2d Cir. 1998); *see also United States v. Amante*, 418 F.3d 220, 221 n.1 (2d Cir. 2005).

Walker's conviction under 18 U.S.C. § 922(g)(1) is not a crime of violence within the meaning of the Career Offender Guidelines, because the statute does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). *See United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) ("Passive possession of a firearm [under 18 U.S.C. § 922(g)(1)] (even one as potentially dangerous as a machinegun) is not a crime that includes—as an element that must be proved by the government—the use, attempted use, or threatened use of physical force. The lack of such an element means that it does not constitute a crime of violence under U.S.S.G. § 4B1.2(a)(1). Moreover, such possession is clearly not one of those specifically-enumerated crimes listed in U.S.S.G. § 4B1.2(a)(2).").

V.    18 U.S.C. § 3553(a) Considerations and Guidelines Calculation

A.  Walker's Background

Walker is a 44 year-old United States citizen. *See* PSR at ¶ 2. Because of his mother's drug addiction, he was removed from her home as a young child and placed in foster care. PSR ¶ 58. He was first incarcerated at age 14. PSR at ¶ 71. Since 1998, he has been out of custody for less than 3 years. PSR at ¶¶ 42-46.

He is in a romantic relationship with M.M.  PSR at ¶ 62.  They have no children together, but Walker lives with, and helps care for, M.M.'s three children from previous relationships.  PSR at ¶ 65.

B.   Statutory Sentencing Range and Guidelines Calculation

| Counts | Statutory Sentencing Range | Guidelines Offense Level |
|---|---|---|
| **(1) Hobbs Act Robbery 18 U.S.C. 1951(a)** | **20 year maximum.** | 20 — 2B3.1(a)<br>+4 — 2B3.1(b)(3)(B), special offense characteristics for discharging weapon, causing serious bodily injury to victim.<br>**Offense Level= 24** |
| **(2) Committing physical violence in furtherance of a robbery 18 U.S.C. 1951(a)** | **Dismissed as multiplicitous.** | |
| **(3) Possessing, brandishing, and discharging a firearm during a crime of violence 18 U.S.C. 924(c)** | **10 year mandatory minimum.**<br><br>Count 3 must be imposed consecutively to all other counts. | 2K2.4(b) — Guideline sentence is the minimum term of imprisonment required by statute**.**  Grouping rules (Chapter 3) do not apply to this count of conviction. |
| **(4) Felon in possession of ammunition 18 U.S.C. 922(g)** | **10 year maximum.** Because the court finds he is not subject to the Armed Career Criminal Act enhancement he is not subject to the 15 year mandatory minimum. | 24 — 2K1.3(a)(1), committed offense subsequent to sustaining 2+ felony convictions for crimes of violence.<br>**Offense Level = 24** |

| Guidelines Calculation | |
|---|---|
| Total (multi-count) Adjusted Offense Level | 24 |
| Criminal History Category | V |
| **Guidelines Range** | 92-115 months + 10 year minimum = 212-235 months |

i. Offense Level Calculation

This court adopts the offense level calculations suggested by Probation with respect to Count One and Count Three. *See* PSR at ¶¶ 16-21 (assigning an offense level of 24 for Count One); *see also* PSR at ¶ 22 (stating that Count Three is not subject to the grouping rules, but requires a 10 year mandatory minimum to run consecutively to any other term of sentence).

Probation concluded, for Count Four, that Walker should be designated as an Armed Career Criminal under 18 U.S.C. § 924(e)(1), and assigned an offense level of 34. *See* PSR at ¶¶ 23-28; *see also* U.S.S.G. § 4B1.4(a)-(b). The court does not sentence Walker as an Armed Career Criminal. *See supra* IV.B. Because, however, Walker's convictions for South Carolina Strong Arm Robbery, § 16-11-330(A), and aiding and abetting assault with a dangerous weapon with intent to do bodily harm, 18 U.S.C. §§ 113(a)(3), qualify as violent felonies under the Guidelines, his base offense level for Count Four is 24. *See* U.S.S.G. § 2K2.1(a)(2) ("24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."); *United States v. Walker*, 595 F.3d 441, 447 (2d Cir. 2010) ("[B]ecause South Carolina's common law strong arm robbery offense corresponds substantially to the generic definition of robbery, the offense categorically qualifies as a predicate 'crime of violence' for purposes of applying the Guidelines enhancement."); *Gadsen v. United States*, 229 F. Supp. 3d 427, 430 (D.S.C. 2017) (finding that "South Carolina strong arm robbery is a lesser-included offense of armed robbery" and "is categorically a crime of violence under the force clause"); *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (holding that a violation of 18 U.S.C. § 113(a)(3) is a crime of violence under the force clause of U.S.S.G. § 4B1.2(a) "because it proscribes common law assault with a dangerous weapon, not simple common law assault.").

Counts One and Four both yield an offense level of 24, which provides a total adjusted offense level of 24. *See* U.S.S.G. § 3D1.3(a).

ii.   Criminal History Calculation

The court adopts Probation's criminal history score of 11. PSR at ¶ 47 (noting a subtotal criminal history score of nine, and a two-point increase for committing the instant offense while on supervised release).

iii.   Total Calculation

An offense level of 24 and a criminal history score of 11 establishes a criminal history category of V. *See* U.S.S.G. Ch. 5 Pt. A, Sentencing Table. The court does not adopt Probation's finding that Walker is a Career Offender, which would place him in criminal history category VI. PSR ¶ 47. The court's calculation yields a term of imprisonment of 92-115 months, or 212-235 months if considered with the 10 year minimum for Count 3. *See* U.S.S.G. Ch. 5 Pt. A, Sentencing Table.

iv.   Sentence Imposed

| Counts | Sentence | Supervised Release |
|---|---|---|
| **(1) Hobbs Act Robbery 18 U.S.C. 1951(a)—discharging the weapon applies to count 1** | Time Served. Approximately 34 months to run concurrent to Count Four. | Five years to run concurrent to all counts. |
| **(2) Committing physical violence in furtherance of a robbery 18 U.S.C. 1951(a)** | Dismissed as multiplicitous. | |
| **(3) Possessing, brandishing, and discharging a firearm during a crime of violence 18 U.S.C. 924(c)** | 10 year mandatory minimum to run consecutive to any other term of sentence. | Five years to run concurrent to all counts. |
| **(4) Felon in possession of ammunition 18 U.S.C. 922(g)** | Time Served. Approximately 34 months to run concurrent to Count One. | Five years to run concurrent to all counts. |

VI.    Conclusion

Count Two is dismissed.  Walker is not subject to a sentence enhancement under federal law or the Career Offender Guidelines.

Walker is sentenced to 10 years' incarceration for Count Three, to run consecutive to a concurrent sentence of time served, approximately 34 months, for Counts One and Four.  He is sentenced to five years' supervised release.  No fine is imposed since he has, and will have, no assets.  A $300 special assessment is payable forthwith.  No restitution is imposed.

The court considered the enumerated factors under 18 U.S.C. § 3553(a) in imposing a "sufficient, but not greater than necessary" sentence.


SO ORDERED.


/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: May 17, 2018
       Brooklyn, New York